## JONES *vs.* THE STATE OF GEORGIA.

[Chief Justice Warner being engaged in presiding over the senate organized as a court of impeachment, did not sit in this case.]

1. Where a trunk containing money was stolen from a bed-room, and the key was, at the same time, stolen from a private receptacle in the same room, and tracks, which appeared to be such as the prisoner's boots would make, were soon afterwards traced to where the trunk was opened with the key and rifled of the money; and the prisoner having been seen with certain of his relatives shortly before, and again shortly after the criminal transaction, evidence that his said relatives had been in the service of the prosecutor and having become unfriendly with him, had left it, and that they knew where the key and the trunk were usually kept and knew also that the latter contained money, is admissible for the prosecution, though a slight part of such evidence as to knowledge, be the previous declarations of such relatives, or some of them, made when the prisoner was not present. Opportunity appearing for the prisoner to have acquired the information from his relatives, the jury might consider whether, in the light of all the circumstances, he had acquired and used it.

2. Where the creating of an opportunity to commit larceny from one building seems to have been the motive for setting fire to another on the same premises, evidence of the larceny is admissible against the prisoner on his trial for the arson.

3. That tracks corresponding to those which would be made by the prisoner's boots were traced from the house in which a larceny was committed during the progress of the fire, to the place where some of the stolen property was left by the thief, is admissible on the prisoner's trial for the arson (the two buildings being on the same premises), although similar tracks were not discovered between the buildings, or about that which was burned, or tending directly to or from it. Where two crimes are connected in time, place and purpose, there is some probability that the perpetrator of one perpetrated both.

4. The verdict was not unwarranted.

Criminal law.    Arson.    Evidence.    New trial.    Before Judge LESTER.    Cobb Superior Court.    March Term, 1879.

Reported in the opinion.

W. T. & W. J. Winn, for plaintiff in error, cited 26 *Ga.*, 633 ; 37 *Ib.*, 199 ; 55 *Ib.*, 276 ; 20 *Ib.*, 681 ; 17 *Ib.*, 356 ; 8 *Ib.*, 408.

Thomas F. Greer, solicitor-general, for the state, cited Code, §3749 ; Hopkins Penal Code, 480 ; 28 *Ga.*, 200 ; 33 *Ib.*, 257.

Bleckley, Justice.

The prosecutor's gin-house was burned on the night of January 1st, 1879, between ten and eleven o'clock. The plaintiff in error, his mother, his brother, and a fourth person, named Jenkins, whom they called cousin, were jointly indicted for the offense. Only the plaintiff in error was tried, and he being found guilty his counsel moved for a new trial, which was refused. The grounds of the motion were as follows :

1st. Because the verdict is contrary to evidence and the weight of evidence and so much so as to shock the moral sense of justice and of right.

2d. Because the verdict of the jury is entirely without evidence to support the same.

3d. Because the verdict is contrary to the following charge of the court, to-wit : " The law presumes every one innocent until the contrary is made to appear by proof, and this presumption will shield and ought to shield this defendant until it has been overcome and rebutted by evidence of such character and strength as satisfies you of his guilt beyond a reasonable doubt."

4th. Because the verdict of the jury is contrary to the following charge of the court, to-wit : " It is not enough for the state to prove that the gin-house of Russell Pace was consumed by fire, but before the defendant can be rightfully convicted in this case he must be connected with the burning by the evidence. It must be shown by the evidence to your satisfaction beyond a reasonable doubt,

that the defendant did maliciously and wilfully burn the gin-house, as charged in the indictment, or you cannot rightfully find him guilty."

5th. Becau e the verdict of the jury is contrary to the following charge of the court, to-wit : " Where it is sought to convict a defendant upon circumstantial evidence alone, the evidence should exclude every hypothesis but the defendant's guilt. It is not enough that the evidence goes in the direction of showing guilt, or tends to show guilt, it must be inconsistent with the reasonable supposition of his innocence."

6th. Because the court erred in allowing the state's counsel to prove, over the defendant's objection, about the taking of the trunk and money, and about the knowledge that Alfred Jones, Ned Jenkins and Ducilla Matthews had about the said trunk and its contents and about their knowledge of the house and where the key was kept ; and because he erred also in allowing the state's counsel to prove, over defendant's objection, that there was bad feeling on the part of said Alfred Jones, Ned Jenkins and Ducilla Matthews toward the prosecutor, and that they, or some of them, had been asking about the trunk and money of the prosecutor a short time before the burning, the defendant, Charles Jones, who was alone upon his trial, being in nowise con nected therewith, and it not being shown that he ever had any knowledge of any of said matters and things so proven over defendant's objection.

7th. Because after all the testimony for the state was closed, the court erred in overruling the motion of defendant's counsel to rule out the evidence previously objected to, and mentioned in the 6th ground of this motion, upon the ground and for the reason that the state had failed to connect the defendant on trial therewith or to make him responsible therefor.

8th. Because the court erred in allowing the state's counsel to prove, over defendant's objection, anything about the tracks from the dwelling-house of the prosecutor to the woods

where the trunk was found, said tracks never having been traced to the gin-house or from the gin-house, or having been in anywise connected with the burning of the gin ; and because the court erred in refusing to rule out said testimony after the state had closed its evidence and failed to connect the tracks with the burning of the gin.

9th. Because the verdict is contrary to law, to evidence, the weight of evidence, and is entirely without evidence to support the same."

The evidence is voluminous and need not be recited at large.   It showed that the gin-house was near the prosecutor's dwelling, and that the probable motive of the arson was to open up an opportunity for committing a larceny from the dwelling.   Whilst the fire was raging, and all the family were at and about it, a trunk containing money was stolen from the prosecutor's bed room.   It was missed in a few minutes after the alarm was given, and next morning it was found at a short distance from the house, in an opposite direction from the gin-house, with the key in the lock, and the money gone.   The key had been taken from a coatpocket in which it was usually kept in the bed-room.   A man's tracks were found leading from the dwelling to where the trunk was left.   These tracks correspond with the prisoner's boots ; one of the boots had iron upon the heel, the other having none, and this peculiarity was indicated by the tracks.   No tracks could be identified about the gin-house, so many persons having tramped there before any examination was made.   After midnight, on the night of the arson, the prosecutor and some other persons went to the prisoner's mother's, about a quarter of a mile from the scene of the burning.   They called for the prisoner's brother, and the prisoner immediately sprang out through a window and ran off in his shirt, leaving his clothes, hat, and boots in the house.   His brother did not run nor otherwise betray guilt.   The boots were taken, and on the next day were compared with and found to fit the tracks.   The prisoner's home was not at his mother's, but at a place about

three miles from the prosecutor's. The three persons indicted with the prisoner had been in the prosecutor's employment and had left him shortly before the burning, and were no longer on friendly terms with him. They knew that the trunk contained money, and that the key was usu-ally kept in the coat-pocket. It did not appear that the prisoner had like knowledge, unless he had acquired it from them. All the accused parties, except the mother, were seen together, on the afternoon of the day of the burning, and again about sundown of the same day, the former time within a quarter, and the latter within half a mile of the gin-house, engaged in hunting. Whilst in the employment of the prosecutor, the co-defendant whom the others called cousin, had spoken to the prosecutor's son about the prose-cutor's money, and about its being kept in a trunk, making statements and asking questions in relation thereto. These were the material facts going to implicate the plaintiff in error in the arson, and though he introduced some evidence, it was clearly insufficient to overcome them. He offered no explanation, whatever, of his being found at his mother's house, or of his flight through the window. None of his co-defendants in the indictment were introduced by either party. All the inmates of prosecutor's house were examined.

1. The sixth and seventh grounds of the motion for a new trial go in part to the admission and retention of evidence by the court, that the co-defendants of the prisoner had knowledge of the trunk and of its contents, and of where the key was kept, a portion of this evidence being the proven inquiries and declarations of one or more of the co-defendants, made whilst working for the prosecutor on the premises. The complaint is, that these matters are in-competent to affect the prisoner, as it is not shown that they were ever communicated to him, or that he was present when the inquiries and declarations were made. It is certain that whoever stole the trunk knew where it was and where the key was, for they were taken in a few minutes

after the prosecutor and his wife left the bed-room, too short a time for them, especially the key, to have been discovered without previous knowledge, or so the evidence strongly indicates. The prisoner's flight, and his boots as compared with the tracks, point to him as the person who committed the larceny. The other defendants were his relatives, and he is shown to have been in company with two of them only a few hours before the criminal transaction, and again with one of them at the house of the third shortly after it. That they, or some of them, had imparted to him such knowledge as they possessed concerning the trunk, the money in it, and the key, is not beyond the scope of reasonable inference. It appears, also, that they had become unfriendly with the prosecutor, and had recently left his service. This supplies a possible motive on their part to make disclosures which could be used in robbing him, even if they were not to share in the spoils. But it is not necessary to look, nor do we look, at the case as one of conspiracy, in order to pronounce the evidence competent. Viewed in that light, so much of the evidence as consists of declarations would have to be restricted to declarations made during the pendency of the criminal project. Code, §3775. We are not in the present case dealing with declarations merely as such, but with them as a part of the train of connected facts going to show that the prisoner's relatives had certain knowledge. The declarations now in question are, in themselves, verbal acts evincing a condition of mind, and they were made at a time when other facts were transpiring, to-wit: free intercourse with the prosecutor's house and family, tending to the same point. It is not pretended that the prisoner had any direct, personal knowledge of the trunk, or of its contents, or of the key, but the theory of the prosecution is, that his relatives had, and that they probably communicated that knowledge to him. Their declarations made while they were in the prosecutor's employment, and at work on the premises, are used as a part of the chain of evidence to establish

*their* knowledge, leaving *his* to be inferred from his proved association with them immediately before and after the perpetration of the crime. Let it be conceded that the co-defendants had, or may have had an innocent object in imparting the information, still, the great fact remains that the prisoner had an opportunity to acquire it from them. If it came to him in the way of mere gossip, or idle talk, it would be none the less available to him as a means of committing the larceny. That he did acquire it thus or otherwise, is far from a necessary inference; but there is no rule of law which requires an inference to be necessary in order that the foundation of it may be admissible in evidence. The declarations do not stand alone, but in connection with the testimony of the prosecutor's wife, to the effect that the three co-defendants, or at least two of them, actually knew where the trunk was kept, where the key was kept, and that the trunk had contained money.

2. The same grounds of the motion (6th and 7th) make the point that the disappearance of the trunk and the money on the occasion of the burning, was not evidence against the prisoner on an indictment for the arson. The commission of the larceny evinced a motive for the arson, and for that reason the evidence was clearly competent.

3. The eighth ground of the motion controverts the right of the state to prove anything concerning the tracks from the dwelling to where the trunk was found, because similar tracks were not traced to or from the gin-house. The two buildings were about one hundred yards apart. Between them, and around the gin, many persons had walked before the ground was or could be examined by day-light. When it was examined, there was such an intermixture and confusion of tracks that identification was not practicable. As the larceny was apparently the motive to the burning, the fair presumption is that the thief was also the incendiary. If the prisoner made the tracks which were identified as his, or as made with his boots, it is a moral certainty that he committed the larceny; and as it

does not appear that the arson was committed by any one else, the jury might fairly conclude that it was his work. It took both crimes to yield the fruit which the thief realized—the arson to afford opportunity and furnish a cover for the larceny, and the larceny to remove the trunk and its contents to where the money could, without the danger of observation or interruption, be taken out and appropriated.

4. All the other grounds of the motion assail the verdict as contrary to law, to the charge of the court, to evidence, or as unsupported by the evidence. The facts proved made a case of circumstantial evidence from which the jury could have inferred the guilt of the prisoner. Unless we could pronounce that in so inferring they violated reasonable probability, we cannot negative their verdict. Their doubts, if they had any, have all been overcome; and such as we feel are too slight to nullify their solemn finding.

Judgment affirmed.