### 1238.  THOMPSON, *alias* EAKER, v. THE STATE.
### 1260.  BARTON v. THE STATE.

1. When a crime has been committed which, from its nature or the details of its commission, necessarily or probably involved the participation of more than one person, it is permissible for the State to prove, on the trial of one of the persons charged with committing it, that, shortly after the crime was committed, he was seen in company with another person and that this other person was, by the circumstances of the case and by the indicia of guilt found upon him, connected with the crime.

2. Upon reasonable grounds for his suspicion, a police officer may, without warrant, arrest a suspected felon apparently attempting to escape, and, after such an arrest, may subject the clothing of the prisoner to a reasonable search.  Evidence of crime so obtained is not inadmissible against the defendant on the ground that he is thereby compelled to disclose evidence against himself.

3. To render evidence inadmissible on the ground that the prisoner was compelled to produce it against himself, it must appear that such compulsion was used as to rob the prisoner of volition in the matter.

4. Evidence which bears a distinct relevancy to the case on trial is admissible against the defendant, though it tends to show also his complicity in another crime.

5. Where a defendant has been convicted of burglarizing a bank, and attempts to have the verdict set aside on the ground that, unknown to him, one of the jurors who tried him was related to a stockholder in

the bank, the juror is incompetent to testify to the alleged relationship. The evidence submitted in support of the attack must be such as to show not merely that at the time of the hearing of the motion for a new trial the asserted relationship existed, but definitely that it existed at the time of the juror's service.

6. The trial was free from error; and the verdict is supported by the evidence.

Indictments for burglary, from Taliaferro superior court—Judge Worley. April 8, May 6, 1908.

Argued June 14,—Decided July 31, 1908.

*W. N. Maltbie, J. A. Beazley, B. W. Wall,* for plaintiffs in error. *David W. Meadow, solicitor-general,* contra.

POWELL, J. These defendants were separately tried and convicted of burglary. The banking house of the Bank of Sharon was broken in the nighttime and the safe blown open by the use of explosives. A few hours later, these two men boarded the train of the Georgia Railroad, at a station near Sharon; circumstances raised a suspicion of their complicity in the burglary, and, upon telegrams, a member of the Augusta police force came upon the train at that point and arrested them as they were leaving it. They were searched, and large pistols and an unusual number of cartridges were found upon them; also on one of them was found a piece of soap corresponding in character to that used in blowing the safe. As they left the train one of them was seen to drop a package, which, upon examination, proved to contain dynamite fuses. They were brought back and placed in the jail of Taliaferro county, the county in which the crime was committed. The cashier of the bank, who was acting as prosecutor, asked the sheriff to get him a left shoe from each defendant. The sheriff, without disclosing his purpose, told the men, each, to give him a shoe. Being handcuffed, they simply lifted their feet, and allowed the sheriff to take off their shoes. The witness who testified to this transaction stated unequivocally that no coercion or intimidation was used to procure the shoes. The shoes so obtained were fitted into the tracks near the bank, and, by the correspondence thus established, furnished damaging evidence against the prisoners. When the defendants were arrested at Augusta they claimed to be railroad conductors, and Thompson gave his name as Eaker; producing, in corroboration of his statement, a railway pass, a membership card in a fraternal order, correspond-

ence, etc., bearing the name of J. H. Eaker. On the trial the true J. H. Eaker appeared and testified, that the pass, membership card, etc., were his, and that they had been taken from a satchel in his room at Rock Hill, S. C., a few days before the burglary was committed at Sharon. The prisoner abandoned his contention that he was conductor Eaker and admitted that his name was Thompson. To the overruling of a motion for a new trial each defendant excepts. The grounds are numerous and will not be taken up seriatim, but a few general rulings will be announced, sufficiently broad to cover them all.

1. Throughout several of the exceptions, presented in one form or another, is the point that on the trial of each of these defendants the court admitted testimony which tended to indicate the guilt of the other. The contention is made that the defendants were separately tried, were not charged as conspirators, and no conspiracy between them was shown, and that therefore the indicia of guilt which tended to incriminate one of the prisoners were not relevant on the trial of the other. When a crime has been committed which from its nature or the details of its commission necessarily or probably involved participation of more than one person, on the trial of a defendant accused thereof it is relevant and permissible to show, in connection with other incriminating circumstances, that he was found in company with another person, to whose guilty connection with the transaction the circumstances point. If the particular defendant on trial had been found with a bag soon after the commission of the crime, it certainly would have been relevant to prove that an investigation into it revealed that it contained burglar's tools. Just so when, soon after the burglary, he was seen in company with a man, and an investigation showed that this companion likely was one of the participants in the burglary; the very association became a pertinent link in the chain of circumstances showing his own complicity in the crime. His connection with one of the animate agencies through which the crime was probably committed was as relevant a matter of investigation as would have been his connection with an inanimate agency. Every circumstance which tended to show that the two prisoners were part and counterpart in the personnel, so to speak, of the crime (in which from its nature and manner of commission more than one participant must have been in-

volved) heightened the relevancy, as to each of them, of every guilty badge found upon the other.

2. The point is made that the evidence obtained through the search of the persons of the prisoners by the police, upon their arrest at Augusta, was inadmissible,—that the arrests, having been made without warrant, were illegal, that the search and seizure were unlawful, and that the defendants were thereby compelled to furnish evidence tending to criminate them, in violation of the constitutional guarantee, as construed in the decisions of this court in *Hammock* v. *State,* 1 *Ga. App.* 126 (58 S. E. 66), and other similar cases. The arrests were not unlawful. By the Penal Code, §896, an officer may arrest without warrant if the offender is endeavoring to escape. The right to arrest, without a warrant, a suspected person apparently about to escape is broader in felony than in misdemeanor cases. *Robinson* v. *State,* 93 *Ga.* 77 (18 S. E. 1018, 44 Am. St. R. 127) ; *Johnson* v. *State,* 30 *Ga.* 426; *Harrell* v. *State,* 75 *Ga.* 842. There were strong reasons for suspecting these persons of the felony; they had left the neighborhood of the crime that night on a fast train, and had already reached a border city, in their apparent attempt to flee the State; the arrest was reasonable and justifiable. The arrest being legal, the search of their persons was lawful, and the evidence obtained thereby was admissible against them.

3. The contention that the prisoners were compelled to furnish evidence against themselves, by the action of the sheriff in asking them for their shoes and in taking the shoes thus obtained and comparing them with the tracks found near the scene of the crime, is answered by the decision of the Supreme Court in the case of *Franklin* v. *State,* 69 *Ga.* 36 (47 *Am. R.* 748).

4. The objection to the testimony of conductor Eaker, that the pass, membership card, letters, etc., found in the possession of the defendant Thompson, were his, and that they had been taken surreptitiously from his possession, on the ground that this tended to embarrass the defendant before the jury, by showing his complicity in another and independent crime, is not well taken. Thompson having used these papers in an attempt to establish an identity asserted by him, it was permissible for the State to show that he was thereby asserting a false identity, to aid his

escape, even though by its doing so another crime was indicated. *Ray* v. *State,* 4 *Ga. App.* 67 (60 S. E. 816).

5. One of the grounds of the motion for a new trial in Thompson's case is that one of the jurors who tried him was related to one of the stockholders of the bank of Sharon, and that this fact was unknown to him or his counsel until after verdict. If these facts properly appeared, it would be a good ground for a new trial; but after carefully scrutinizing it, we do not find the ground sufficiently supported. An affidavit from the juror himself, showing the relationship, is attached to the motion; it can not be considered. "As a matter of public policy, a juror can not be heard to impeach his verdict, either by way of disclosing the incompetency or misconduct of his fellow-jurors, or by showing his own misconduct or disqualification from any cause." *Bowden* v. *State,* 126 *Ga.* 578 (55 S. E. 499). It is otherwise verified that at the time of the hearing of the motion for a new trial, Cox, to whom the juror was related, was a stockholder of the bank, but not that he was a stockholder at the time of the trial. This is not sufficient. The affidavit of the defendant that he did not know of the disqualification of the juror at the time of the trial is imperfect, in that it is not entitled in the cause. For these reasons the trial judge did not err in refusing to grant a new trial on this ground.

6. There are other points in the record. We do not deem it necessary to elaborate them, but will be content to say that none of them are well taken. The evidence fully authorized the verdict. *Judgment affirmed.*