### 5920.  LIVINGSTON v. THE STATE.

1. The court did not err in overruling the demurrer to the indictment.

(a) The name City National Bank imports a corporation.

(b) Allegations that a representation was made to a named person "as president" of a named corporation, and that he "as president" of the corporation relied upon the representation, sufficiently stated his relationship to the corporation, and, in connection with the other allegations, sufficiently set forth his authority to act in its behalf.

(c) The nature of the loan in question, its form, character, and terms, were sufficiently set forth.

(d) It being alleged in the indictment that the fraud in the representation related solely to the defendant's interest in the tract of land of which he was alleged to have represented he was the joint owner with his brother, it was not necessary to give the name of the brother. Since only the quantum of the defendant's ownership was important, it was immaterial who was the owner of the other interest in the property; and the allegation as to who was tenant in common with the defendant might properly have been treated as mere surplusage.

2. The court erred in admitting statements of the defendant alleged to have been made subsequently to the transaction in which he was alleged to have committed the offense of cheating and swindling. These statements were not the basis of the credit alleged to have been extended, and, having been made two months after the alleged offense, could not serve to illustrate his motive at the time of the transaction alleged to be criminal. False representations made more than two months after similar representations upon which the accused is being tried for the offense of cheating and swindling are too far removed in date from the crime charged to be said to be representations made "at or about the same time."

3. If the error of the judge in admitting improper testimony, which thereafter was promptly excluded by the court, or in permitting prejudicial remarks by counsel, was not sufficiently cured by instructions of the court to the jury, counsel should have promptly moved for a mistrial; and the failure to do this may be treated as a waiver of the error.

4. The error of admitting, over objection, parol evidence of the contents of writings is not cured by a statement on the part of counsel for the prevailing party tending to show that the parol evidence was submitted under a misapprehension on his part that the writings were inaccessible; nor were the remarks of counsel a proper substitute for an

unequivocal ruling by the court, when such a ruling was required, and when, in the absence of such a ruling, the illegal testimony still remained subject to the consideration of the jury.

5. Some of the assignments of error, not being argued in the brief of counsel for the plaintiff in error, must be treated as abandoned; and none ,of the remaining exceptions contained in the motion for a new trial are material.

DECIDED SEPTEMBER 22, 1915.

Accusation of misdemeanor; from Terrell superior court—Judge Worrill. July 11, 1914.

*J. G. Parks, H. A. Wilkinson,* for plaintiff in error.

*B. T. Castellow, solicitor-general, R. R. Arnold,* contra.

RUSSELL, C. J. The indictment alleged, in substance, that the accused, by fraudulently representing to W. A. McLain, "as president of City National Bank of Dawson, Ga.," that he (the accused) was the owner of a tract of land known as the Wall place, and of a half interest in 130 acres of land in Terrell county, the other half of which belonged to his brother, induced the said City National Bank to extend him a credit or lend him six hundred dollars, and that by reason of this fact the City National Bank sustained a loss of six hundred dollars, and the defendant was guilty of the offense of cheating and swindling. The defendant demurred to the indictment generally, because the allegations therein were not sufficient to charge a violation of law, and specially, (1) because it was not alleged whether the City National Bank was a corporation, firm, or individual, or otherwise a person who was authorized to extend credit and who was capable of being defrauded; (2) because it was not alleged what was the relationship of W. A. McLain to the bank, and his authority to execute the loan was not set forth; (3) because the indictment was defective in that the nature of the loan in question and its form, character, and terms were not sufficiently set forth; and (4) because the name of the brother referred to in the indictment was not set forth, nor the place known as the "Wall place" sufficiently described.

We think the court correctly overruled the demurrer. It is plain that the term "City National Bank" imports a corporation; and a corporation as well as an individual may be defrauded so as to subject one who perpetrates a fraud to criminal liability under the provisions of section 703 of the Penal Code, under which the accused was indicted.

It is insisted in the second ground of the special demurrer that the relationship of McLain to the City National Bank is not sufficiently stated. The statement of the indictment is that the accused did "falsely and fraudulently represent to W. A. McLain, as President of City National Bank of Dawson, Ga.," etc. In our opinion, while the representations were made to an individual, the allegation that they were made to him "as President of City National Bank" is not subject to the objection that the words "President of City National Bank" are merely descriptio personæ. The statement that the representations were made to W. A. McLain "as President" precludes the inference that they were made to McLain as an individual, and is equivalent to a statement that they were made to the President of City National Bank of Dawson, Georgia, who was qualified to negotiate in its behalf. There is no merit in the contention that the nature of the loan was not sufficiently set forth, for the reason that its form, character, and terms were not alleged. The indictment states that upon representations made by the defendant, the City National Bank extended to him a credit of $600. If the lender was induced by fraudulent representations of the defendant to lend this money to him, and if such representations were knowingly false and made with intent to defraud, cheat, and swindle the corporation extending the credit, the offense would be proved as much if the contract existed only in parol as if it had been reduced to writing.

It was immaterial what was the name of the brother of the accused who was alleged to have been a copartner or tenant in common with the accused in the ownership of the 130 acres of land in Terrell county. The averment of the indictment was that the bank was defrauded by the representations of the accused, which were false and made with an intention to deceive. It was alleged that the accused claimed to own a half interest in that part of the property described. If the defendant claimed only to own a half interest in the land, the prosecutor would have been defrauded as much and no more than the value of the interest of the accused therein. The fraud consisted in the representation made that the defendant owned certain land in connection with his brother. The quantum of the brother's interest or the quantum of another's interest would simply be the measure by which to determine whether any false representations had been made, and whether the person alleged to

have been damaged was cheated and defrauded. If the accused stated to the president of the bank, as the official charged with the administration of its affairs, that he owned a half interest in a certain place, even though it might not be more definitely located than in the limits of a particular county, the description would be sufficient to identify the transaction and supply the means of determining whether the land belonged to the accused or to another, and whether the complaining party was cheated and defrauded. If the allegation that the accused represented that a half interest in the land was his property be true, it is immaterial who might happen to be his cotenant in possession of the premises.

The court overruled a motion for a new trial, and this is the basis of the remaining exceptions. The first three special grounds of the motion are without merit. The court permitted the witness McLain to testify that he was president of the City National Bank; and we think this was proper. If the indictment had alleged that the representations were made to "W. A. McLain, president," the designation might have been taken as descriptio personæ; but the allegation that they were made to McLain "as president of the bank," sufficiently states that they were made to him as president, and not as an individual.

The court did not err in admitting the evidence of McLain to the effect that he knew that the accused "had an equity in the land which was as good as a title;" for, under the statement in the indictment, the accused was the owner of the property with a part of the purchase-money unpaid. The term "owner" does not necessarily imply that the person thus described is the absolute owner or the owner in fee of realty. The holder of a bond for title to land, with a part of the purchase-money paid, is, to all intents and purposes, the owner of the land.

In our opinion the court erred in admitting the testimony of J. Pat Perry, to the effect that he heard the defendant make a statement in the last of March, 1913, that he owned land, and that he owned the "Wall place" at that time. The date of the transaction alleged in the indictment was January 2, 1913, and it is immaterial who owned the "Wall place" in the last of March, 1913. The real question was who owned it at the time the representations and the advance were made, and what was the motive of the defendant in making the statement that he owned the property. Under the

ruling of the Supreme Court in *Farmer* v. *State,* 100 *Ga.* 41 (28 S. E. 26), the State is permitted to show, in cases of cheating and swindling, that the defendant made similar statements to another at or about the same time, for the purpose of fraudulently obtaining his goods. But in order for such testimony to be admissible, the statements must have been made at or about the time the false representations charged in the indictment were made. We do not think that statements made more than two months after the alleged fraudulent representations were pertinent to illustrate the quo animo with which the defendant originally made the representations charged in the indictment.

The court, over objection of the defendant's counsel to the effect that the record containing a judgment adjudging the defendant to be a bankrupt was not competent, excluded it from the evidence. It appears, however, that the solicitor-general had a certified copy of the record of the proceeding in which the defendant was adjudged a bankrupt. The solicitor-general stated that he proposed to state to the court what he expected to prove by the document which he tendered. Defendant's counsel objected to this statement. The court permitted State's counsel to proceed with his statement as to what would be established by the record were the document introduced, but took no affirmative action to exclude the statement until the solicitor-general had made a statement of the contents of the proceedings in bankruptcy; and the court, after admitting the testimony, withdrew it from "the consideration of the jury and instructed them to pay no attention to the remarks of the solicitor-general." It would have been the better practice for the judge to have privately inspected the document and to have ruled the proof of its contents to be inadmissible. The defendant made no further motion in regard to the testimony after the court directed the jury to exclude it from their consideration. We think the defendant was perhaps prejudiced by the statement made by the solicitor-general, and it may be, as insisted by counsel, that the statement of the solicitor-general was made merely to call the attention of the jury to a fact which could not be legally proved upon the trial; but inasmuch as no motion to declare a mistrial was made, the point must be deemed to have been waived by the defendant.

We think the court erred in admitting the testimony of Worthy, the cashier of the bank, over the objection of the defendant's coun-

sel, and in failing to exclude the testimony after it was made to appear that such testimony was inadmissible, although there was no motion to exclude the testimony. Worthy testified that he was the cashier of City National Bank of Dawson, and that certain checks by which the funds were withdrawn from the bank were signed by the defendant and his brother, T. S. Livingston. Thereupon the defendant's counsel objected to the testimony, upon the ground that the checks themselves were the highest evidence of the signatures. Upon this objection being made, the solicitor-general, having inquired where the checks were at the time of the trial, and the cashier having answered that they were in the possession of the bank, remarked, "I thought the checks had been surrendered." The trial judge, in an explanatory note, states that from the circumstances just detailed, he thought that "the testimony had been abandoned," and consequently did not rule upon the objection made by counsel for the defendant. It is insisted by counsel for the State that although the judge did not rule upon the objection made by the defendant, the failure of the court to make a ruling upon the objection was not error, because the defendant did not move to exclude the testimony. Objections to testimony may be presented either by objection to its introduction or by moving to exclude it after it has been introduced, or both methods may be adopted. However, where proper objection to testimony is made and a subsequent investigation only emphasizes the inadmissibility of the testimony, it is not incumbent upon the objector to move to exclude the testimony to which he has objected, unless the court has overruled the objection. If a proper motion is made, it is the duty of the court to rule upon it; and in the present instance the judge should not have been content with the statement of the solicitor-general that he thought the checks had been surrendered, but should have sustained the objection, especially after the further questioning of the witness brought forth the fact that the primary proof was accessible to the prosecution. The error of admitting over objection parol evidence as to the contents of the checks was not cured by the statement of the solicitor-general that the evidence was submitted under a misapprehension on his part; for a remark of counsel can never afford a proper substitute for an unequivocal ruling of a court, when a ruling is required. Even as explained by the note of the presiding judge, the parol evidence remained before the

jury, and, in the absence of any positive knowledge as to how it may have affected their verdict, the effect must be presumed to have been prejudicial to the losing party.

In the brief of counsel for the plaintiff in error no reference is made to the assignment of error contained in the 6th special ground of the motion for a new trial, and consequently this ground must be treated as having been abandoned.

The charge of the court to which exception is taken in the 8th special ground of the motion conformed to the allegations of the indictment, and is free from error. It is true that the court charged the jury that if they believed that the defendant falsely represented to the president of the bank, acting in its behalf, that he was the owner of an equity in the place known as the "Wall place," when in fact he was not such an owner, the jury would be authorized to convict, provided, of course, loss had been sustained by the bank and the other essential elements of the offense had been proved to their satisfaction. This instruction is excepted to on two grounds: (1) that the instruction amplified the charge in the indictment, and (2) that there was a variance between the allegations of the indictment and the proof as to the ownership of the land in question. The indictment charged that Livingston represented that he was the owner of a piece of land known as the "Wall place," and that all the purchase-money except one note had been paid. The plaintiff in error contends that the "ownership" of real estate can only be properly asserted when the alleged owner is entitled to the realty in fee simple. We can not concur in this view. There may be ownership of an equity in realty as well as ownership in fee simple. The indictment alleged that the property was subject to incumbrance, and that the defendant claimed only to be the owner of an equity. The proof sufficiently conformed to the allegations, and there was no error in the instruction.

Except as pointed out in this opinion, the trial appears to have been free from error; but, for the reasons stated, and since the case as made was a close one upon the facts, the judgment of the trial judge in refusing a new trial will be

*Reversed. Broyles, J., not presiding.*