21898. SHIPPEN *v.* THOMPSON.

DECIDED SEPTEMBER 22, 1932.

*Clark Ray, Roy Lewis, Dorsey & Burtz,* for plaintiff in error.
*William Butt, Albert E. Mayer,* contra.

SUTTON, J. M. W. Thompson sued W. H. Shippen for $2900, besides interest and attorney's fees, alleged to be due upon five promissory notes executed by the defendant and held by the plaintiff as payee. The defendant's answer as twice amended alleged that the notes were executed for a balance due on the purchase-money of the entire capital stock of Southern Stone Corporation, together with its entire assets, and that because the plaintiff had failed to pay and retire a certain indebtedness of the corporation according to one of the provisions of the agreement, the assets and stock of the corporation had become utterly worthless and the considera-

tion for the notes had totally failed. The trial resulted in a verdict in favor of the plaintiff, and the defendant has excepted to the overruling of his motion for a new trial.

The defendant alleged that among the assets of the corporation was a contract between the corporation and another person, by which it had the right to manufacture and sell a product known as Thurmage tile, and to sell machines for the manufacture of such product, in the State of Georgia and four other Southern States; that the notes were executed and delivered with full knowledge on the part of the plaintiff that the defendant was purchasing the capital stock of the corporation for the express purpose of acquiring the contract referred to, the plaintiff well knowing that the defendant would not have purchased the stock except for the purpose of acquiring the rights under this contract; that the contract was incumbered with an indebtedness of $20,000 or other large sum due by the corporation to the other party thereto, and that in the agreement between the plaintiff and the defendant as to the sale of the stock the plaintiff personally assumed the indebtedness on the Thurmage tile contract, which indebtedness the plaintiff has failed and refused to discharge, with the result that the Thurmage tile contract "has become cancelled, thereby making the assets of the said corporation and the stock of the said corporation utterly valueless and causing a total failure of consideration for the execution of the notes sued upon."

The contract between the plaintiff and the defendant as to the sale of the corporate stock was in writing and was introduced in evidence. It recited that the total amount which the defendant agreed to pay for the stock was $4000, and it does not show that the plaintiff undertook to sell to the defendant any other property. In other words, according to the agreement the defendant purchased from the plaintiff the entire capital stock of Southern Stone Corporation, amounting to 150 shares, and only by this purchase did the defendant become interested in the assets of the corporation. The agreement shows that the plaintiff, however, assumed all liabilities of the corporation with two exceptions not relating to the indebtedness on the tile contract. The plaintiff thus did assume and agree to pay whatever indebtedness, if any, the corporation owed upon such contract.

The evidence disclosed that Thurmage tile was an article manu-

factured and sold under a patent held by one Peters, and that at the time of the sale of the corporate stock between the plaintiff and the defendant, Peters had executed two contracts for the manufacture and sale of Thurmage tile and the sale of machines for the manufacture of the same, one of the contracts having been made with Southern Stone Corporation, covering rights in the State of Georgia, and the other with the plaintiff as an individual, covering rights in four other States. The contract between Peters and *the corporation* called for the payment of approximately $13,000 as the balance of the purchase-money due for the rights therein conveyed. The defendant testified that in selling the corporate stock the plaintiff represented that the corporation was the owner of these tile contracts and of all the rights conveyed therein, subject to the indebtedness to Peters, which indebtedness the plaintiff assumed, and that he, the defendant, considered these contracts as constituting the chief assets of the corporation. He further testified in effect that the plaintiff knew that he was acting upon the belief that the tile contracts were owned by the corporation, and that he would not have purchased the stock except for the purpose of acquiring the rights existing under such contracts. The contracts themselves were not introduced in evidence.

The plaintiff and another witness introduced by him both testified that neither of the tile contracts was the property of the corporation, one of them having been made directly between the plaintiff and Peters, the patentee, and the other having been transferred by the corporation to the plaintiff upon his assumption of the balance of the indebtedness owing by the corporation to Peters thereon, and the transfer having been made several months before the transaction between the plaintiff and the defendant. Each of these witnesses further testified that no representations were made to the effect that the title contracts were owned by the corporation, but that on the contrary the defendant was fully and specifically aware that the contracts were the property of the plaintiff and constituted no part of the assets of the corporation.

The evidence showed, without dispute, that the plaintiff afterwards surrendered the contracts to Peters in extinguishment of the indebtedness of about $13,000 owed by the corporation to Peters upon one of these contracts. It further appeared, from the evidence, that Southern Stone Corporation had a plant and machinery

in the city of Atlanta and was engaged in the manufacture of artificial rock used for building purposes, but there was a dispute as to the value of these assets. The plaintiff contended that the defendant was concerned in no other property except the plant, equipment, and good will of the Stone corporation, and that he simply acquired the stock in the corporation, without any agreement or understanding as to other assets.

Some other facts were developed by the testimony, but the above is a summary of so much of the evidence as would seem to be material in a consideration of the several grounds of the motion for a new trial. The facts touching these grounds will be stated in the opinion.

■ In one of the grounds of the motion for a new trial the defendant complains that the court erred in charging the jury that the main issue for determination was whether at the time of the purchase of the corporate stock by the defendant, Southern Stone Corporation owned the contract with reference to Thurmage tile and machines referred to in the defendant's answer, and that if the evidence showed that the contracts did belong to and were a part of the assets of the corporation at the time the defendant purchased the capital stock, then his defense would fall and it would be the duty of the jury to find a verdict in favor of the plaintiff. This charge was assigned as error upon the ground that it did not correctly state the contentions of the parties, in that it limited the issue to the sole question of whether or not the corporation was the owner of the title and machine contract or contracts at the time of the defendant's purchase of the corporate stock, and "deprived the jury of the right to consider the issue raised by both the pleadings and the evidence that respondent well knew that movant was purchasing said capital stock of the corporation for the express purpose of acquiring said contract to manufacture and sell Thurmage tile and the right to sell machines and rights to manufacture and sell Thurmage tile in the states mentioned in the said contract, said plaintiff well knowing that this defendant would not have purchased said capital stock but for the purpose of acquiring the right to manufacture and sell Thurmage tile and sell machines and rights to manufacture and sell said Thurmage tile." The charge was excepted to upon the further ground that it deprived the jury of the right to consider the evidence of the defendant to the effect

that the plaintiff exhibited the tile and machine contracts to the defendant and represented to him that the assets of the corporation consisted mainly and particularly "of this Thurmage tile proposition," and excluded the issue as to the truth or falsity of the plaintiff's alleged representations "with regard to the contract, as being the property of the Southern Stone Corporation;" also upon the ground that the defendant by this charge was deprived "of his legal rights, in that he would have been entitled to prevail if the jury should have believed that respondent had made the representations to movant that the assets of the corporation consisted mainly and particularly of Thurmage tile, Thurmage tile machinery and rights to sell and manufacture the same, and that movant, believing said representations, though deceived thereby, acted upon said representations and bought the capital stock of the Southern Stone Corporation, and suffered loss thereby on account of the nondelivery of said contract by the said Southern Stone Corporation to movant as purchaser."

In another ground of the motion for a new trial it is contended that the court erred in failing to submit the issue which it is claimed was excluded by the charge above referred to, and the assignments of error upon the failure to charge will stand or fall with the exceptions to the charge itself.

In the brief for the defendant it is contended here that the plaintiff should have been prevented by estoppel from claiming that the tile contracts belonged to himself and not to the corporation, if in selling the corporate stock to the defendant he represented that the corporation was the owner of such contracts and of the rights existing thereunder. It is true that the defendant alleged and testified to some facts which might have been relevant on the question of estoppel if the principle had been otherwise sufficiently invoked. The sole defense pleaded, however, was a failure of consideration, alleged to have resulted from the failure of the plaintiff to discharge the indebtedness owing by the corporation to Peters on the tile contract, whereby the stock sold to the defendant and the assets of the corporation were rendered worthless. This is the gist of the defendant's answer, and the case must be disposed of accordingly.

If the contracts belonged to the plaintiff and not to the corporation, it could not be of concern to the defendant that the indebtedness of the corporation was extinguished by the surrender of these

contracts. The complaint in the answer was the failure of the plaintiff to discharge this indebtedness, and there was no agreement as to the manner in which the plaintiff should retire it, whether in money or in property. If he extinguished the indebtedness by surrendering his own property, he satisfied the contract between himself and the defendant, and there was no failure of consideration. If on the other hand the tile contracts were the property of the corporation, their surrender by the plaintiff in attempted settlement of the debt of the company could not have amounted to a discharge of this indebtedness within the meaning of the contract between the plaintiff and the defendant. In such case the evidence would have supported the plea of failure of consideration as interposed, provided it further appeared (as will be *assumed* for the purposes of this decision) that the corporate assets were made worthless by the plaintiff's default. It thus appears that the sole issue for determination was whether the tile contracts were the property of the corporation on the date of the contract between the plaintiff and the defendant for the sale of the corporate stock. The defendant did not plead that the consideration had failed for the reason that the plaintiff represented that the tile contracts were the property of the corporation when in truth and in fact they were held by the plaintiff, but, as above stated, the answer made the defense only that the plaintiff had failed to discharge an indebtedness of the corporation according to agreement. There was no plea of estoppel or fraud, and the charge as given was not erroneous upon the ground that it excluded issues relating to such defenses. For the same reason there is no merit in the exception to the failure to charge.

In *Eagle & Phenix Mills* v. *Herron,* 119 *Ga.* 389 (2) (46 S. E. 405), it was held not to be error for the trial judge, in his instructions, to confine the jury to the issues made by the pleadings, without further charging them upon a theory of defense not set up in the defendant's plea, where such additional charge was not requested by counsel and was not demanded by the evidence. "A charge adjusted to a plea is not rendered erroneous because it conflicts with a theory of the defendant which is not pleaded." *Teasley* v. *Bradley,* 120 *Ga.* 373 (3) (47 S. E. 925). See also, in this connection, *Martin* v. *Nichols,* 127 *Ga.* 705 (2, 3) (56 S. E. 995); *McLean* v. *Mann,* 148 *Ga.* 114 (2) (95 S. E. 985); *Henley* v. *Toole,* 20 *Ga. App.* 146 (3) (92 S. E. 760).

It would seem rather strange that the plaintiff would sell the entire capital stock of a corporation for the sum of $4000 and upon no other consideration assume and agree to discharge an indebtedness of $13,000 owing by the corporation.

■ The evidence showed that the defendant lived in Atlanta but maintained his legal residence in Gilmer county, in which he was sued. In the concluding argument the attorney for the plaintiff made the following statement to the jury, "Bill Shippen [the defendant] lives down there in Atlanta. . . The people of Gilmer county are getting tired of Bill Shippen living in Atlanta and only coming up here in Gilmer county to try his lawsuits and wash his dirty linen at the expense of the people of Gilmer county." The defendant's counsel objected to this statement, upon the ground that it was "improper, prejudicial, and not based on any evidence in the case, but in conflict therewith." These facts were alleged as cause for a new trial, and in the ground relating thereto it was assigned that the court erred in allowing the quoted statement without reprimanding the attorney and without appropriate instructions to the jury to disregard the statement. It does not appear that there was any request for such reprimand or for instructions, nor was there any motion for a mistrial, but the defendant's attorney rested simply upon the objections to the statement. In the brief of counsel for the defendant (the plaintiff in error) it is stated that in approving this ground the trial judge added the following note: "At the time the argument referred to was made, and the objection thereto was made, the court instructed the jury that the [movant], Mr. Shippen, had the right to maintain his legal residence in any county he desired, and to have litigation against him tried in the county of his residence, and that the argument of counsel was improper." We do not find this note in the record, but will deal with the case upon the theory presented by counsel for the plaintiff in error. It appearing therefore that the court did instruct the jury that the defendant had the right to maintain his legal residence wherever he desired, and to have litigation against him tried in the county of his residence, and that the argument of counsel was improper, and there being no request for a reprimand and no motion for a mistrial, it seems that the trial judge fully and adequately responded to the defendant's objections and did not deny or overrule any request or motion made in the defendant's behalf. Under

the facts appearing, the court did not err in overruling this ground of the motion for a new trial. Civil Code (1910), § 4957; *Bridges v. State,* 110 *Ga.* 246 (4) (34 S. E. 1037); *O'Neill Mfg. Co. v. Pruitt,* 110 *Ga.* 577 (36 S. E. 59); *Palmer Mfg. Co. v. Drewry,* 113 *Ga.* 366 (2) (38 S. E. 837); *Benton v. Hunter,* 119 *Ga.* 381 (3) (46 S. E. 414); *O'Dell v. State,* 120 *Ga.* 152, 155 (47 S. E. 577); *Morman v. State,* 133 *Ga.* 76 (65 S. E. 146); *Nix v. State,* 149 *Ga.* 304 (3) (100 S. E. 197); *Southern Ry. Co. v. Wright,* 6 *Ga. App.* 172 (2) (64 S. E. 703); *Lavender v. State,* 9 *Ga. App.* 856 (72 S. E. 437); *Satterfield v. Ayers,* 10 *Ga. App.* 742 (73 S. E. 1091); *Livingston v. State,* 17 *Ga. App.* 136 (3) (86 S. E. 449).

■ In connection with the ground referred to in the preceding division, the defendant submitted affidavits from jurors showing that they were in fact influenced by the statement of the plaintiff's attorney as quoted above. Still another ground of the motion was based upon affidavits of jurors to the effect that they were advised by other members of the jury that a mistrial could not be had in a civil case, but that a majority vote of the jury was controlling, and that the affiants were thereby induced against their judgment to join in a verdict for the plaintiff.

The court did not err in refusing to consider these affidavits, nor in overruling the motion for a new trial so far as it was predicated thereon. A verdict can not be impeached by affidavits of the jurors. Civil Code (1910), § 5933; *Southern Railway Co. v. Sommer,* 112 *Ga.* 512 (37 S. E. 735); *Rylee v. State,* 28 *Ga. App.* 230 (3) (110 S. E. 749); *Pope v. State,* 28 *Ga. App.* 568 (3) (112 S. E. 169).

■ There is no insistence upon the general grounds of the motion for a new trial, and, there being no merit in any of the special grounds, the court did not err in refusing the motion.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*