## RANDALL *v.* THE STATE.

No. 9529. April 14, 1933.

*Linton B. West, George H. Perry,* and *Olin Hammock,* for plaintiff in error.

*M. J. Yeomans, attorney-general, R. A. Patterson, solicitor-general, B. D. Murphey* and *John T. Goree, assistant attorneys-general,* and *Hooper & Hooper,* contra.

Beck, P. J. Pat Randall was indicted and tried for the murder of Uriah Harrell. The jury returned a verdict of guilty, without a recommendation. The defendant made a motion for a new trial, which was overruled, and he excepted.

One White, a witness sworn for the State, was permitted to testify, over objection of the defendant: "I saw Pat Randall after it was said he had shot and killed Uriah Harrell. He came to my house and shot at me. He came up on the porch first, and said he wanted to talk to me. My wife did not want me to go out. Pat Randall knocked the latch off my door and came in. He had a gun. I was sitting by the fireplace. He shot the gun in my house, and the shot from the gun went in my mattress. I came out in the hall, and my wife left. Pat Randall shot once in the house and once on the outside of the house." This testimony was objected to on the ground that it was "irrelevant and prejudicial, and related to a transaction occurring after the shooting of Uriah Harrell, and threw no light on the case on trial." The court overruled the objection. This ruling was not error. The incident testified to by White occurred very soon after the homicide, perhaps in less than an hour. It may have been an hour and a half. The defendant, it is inferable from the testimony, went immediately from the scene of the fatal shooting to the house where he and White lived. His conduct showed utter recklessness; and the evidence objected to may well be considered as part of the res gestæ; but if it was not a part of the res gestæ, it was admissible to show the animus of White.

See *Lampkin* v. *State,* 145 *Ga.* 40 (88 S. E. 563). There was testimony to show that when the defendant was arrested later in the night by the sheriff, he was drunk; that he was utterly indifferent to the effects of the deed he had committed. He was in a reckless mood; he was laughing so as to attract the attention of the officer arresting him. And the testimony of White objected to, if not admissible for any other purpose, would be admissible to corroborate the sheriff's testimony that the accused was drinking, and of course, evidence of the fact that he was drinking or drunk would be material and admissible evidence. This ruling also disposes of the exception contained in another ground of the motion, founded upon the objection to the testimony of the wife of White.

■ A part of the court's charge to the jury was as follows: "The defendant claims that he killed the deceased in self-defense; he claims that at the time he shot and killed the deceased the deceased stood up and ran his hand in his pocket for a knife, and was attempting to attack him. If you believe that is the truth, from all the evidence in the case, taken in connection with the defendant's statement, you should find the defendant not guilty. The defendant further claims that at the time he shot and killed the deceased the deceased stood up and ran his hand in his pocket for a knife and thought he was attempting to kill him and that he killed him." Movant contends that no such contention as that stated by the court was made by the defendant in his statement on the trial, or otherwise; that the only reference to a knife by the defendant in his statement was in connection with an encounter between the defendant and the deceased in the town of Cuthbert, on the same day as that on which the killing occurred, several hours before the actual killing. In his statement the defendant did say, "The night I shot Uriah Harrell he jumped on me in town here, and called me a son of a bitch. Uriah Harrell had a pocket-knife, and he took out his knife here in Cuthbert, and this is where he cut me. He said he was going to kill me, and I was afraid of him. He was coming along in a wagon that night, and he looked and saw me, and said, 'There is the son of a bitch now.' He raised up and put his hand in his pocket, and I shot him." In view of the statement thus made by the defendant, the charge was not erroneous on the ground that no such contention as that stated by the court was made by the defendant. It is true that the defendant did not say that the de-

ceased ran his hand in his pocket for a knife, and attempted to attack the defendant; but from the facts stated by the defendant as to what occurred in town when, as he stated, he was cut by the deceased, and the statement as to what happened when the homicide occurred, the instruction by the court was authorized. Certainly, if inaccurate to a certain extent, it was not so inaccurate as to be reversible error.

■ Error is assigned on the failure of the court to give in charge the law of voluntary manslaughter, movant insisting that the defendant's statement and the testimony showed facts making relevant and appropriate the law of that grade of homicide. With this contention we can not agree. Under the evidence the law of voluntary manslaughter was not involved. After proving threats made by the defendant, the State introduced an eye-witness, Walter Williams, who testified in part as follows: "We were going home together on the wagon. Floyd Hay, Tom Sammons, Ben Mitchell, Uriah Harrell, and myself were on the wagon. I was driving the wagon. I had a pair of mules hitched to the wagon. We left Cuthbert that evening after dark. It was five or six miles from Cuthbert to Uriah's home. I saw Pat Randall that night before I left Cuthbert. I know nothing of any trouble between Pat Randall and Uriah Harrell before I left town. I saw Pat Randall while on my way home. I first saw him about fifty yards from Mr. Butler's. I was still in the wagon. Pat Randall was walking along the road, meeting me. No one was with him. I did not see a weapon in Pat Randall's hand until after he shot. He called my name, and I stopped the mules. He said, 'Is that Walter Williams?' and I stopped the mules. Pat Randall asked if Uriah Harrell was in the wagon, and Uriah said yes, and Pat said to Uriah, 'Haven't I always treated you right?' and the gun fired. Pat Randall did not give Uriah time to answer him. Pat Randall shot Uriah Harrell. Pat was five or six steps from Uriah when he shot him. The load hit Uriah Harrell under the left shoulder. Uriah fell on his knees in the wagon. Pat Randall was standing on the ground in the public road. Uriah said, 'Walter, I am gone. Tell my wife.' Uriah fell in the wagon immediately after he was shot; he fell on his knees in the wagon. Pat Randall walked up the road with the gun. Uriah Harrell lived about two hours after he was shot. . . Uriah did not say anything to this defendant. He made no reply to Randall when he

asked him if he had not always treated him right. I was seated on the front seat of the wagon, and Uriah Harrell was seated on the back seat of the wagon. When I stopped the mules Uriah was in the wagon, and the gun fired. Only one shot was fired. I knew of no previous trouble between Uriah Harrell and Pat Randall. Uriah had not talked to me about any trouble." Two other eye-witnesses were introduced, Ben Mitchell and Tom Sammons. It is unnecessary to quote from their testimony. They were cross-examined at length. Their testimony in every material particular corroborated the evidence of Williams, and all showed that the homicide was an unprovoked murder. If the defendant's statement introduced an issue as to whether the crime involved voluntary manslaughter or not, there was no written request to charge upon that subject, and in the absence of such request the court was not required to charge upon the law of voluntary manslaughter.

■ The motion also contains an exception to the following charge of the court: "One will not be justified in killing another for a provocation by words, threats, menaces, or contemptuous gestures. Before any one would be justified in killing another on account of threats, menaces, or gestures, it would be necessary for it to appear that by some act or deed done or committed by the party killed, in connection with such threats, menaces, or gestures, he had the present purpose of putting such threats, menaces, or gestures into immediate execution." The exception is as follows: "Movant insists said charge was erroneous in this case, and that it is not the law that none of these things shall be sufficient to produce such a fear as will justify the killing. Movant insists that whether the circumstances of the killing of the deceased by the defendant were such as to excite the fears of a reasonable man that a felony was about to be committed on him, and that it was necessary to kill the deceased in order to prevent it, was a question to be determined by the jury in the light of their own judgment and experience, and movant insists that it was error for the court to so hold in effect that the circumstances of the killing of deceased by defendant were not sufficient; thus excluding them as a defense unless they were accompanied by an actual assault upon the person of the accused. Movant insists that it is not the law that the deceased should have had the present intention or purpose of putting such threats, menaces, or gestures into immediate execution, and asserts that al-

though the deceased may have had no such intent to put his threats into immediate execution, yet if the defendant, acting under the fears of a reasonable man that his life was in danger or that a felony was about to be committed upon him by the deceased, killed the deceased, the killing would be justifiable." If the instruction here dealt with stood alone, there might be merit in the criticism. But the court charged, immediately before giving this instruction and in connection therewith, as follows: "The court charges you further that while provocation by words, threats, menaces, or contemptuous gestures shall in no case be sufficient to reduce the grade of homicide below the grade of murder, when the killing be done not because or on account of any fear in the mind of the slayer, but solely for the purpose of resenting the provocation given, it is nevertheless true that threats, accompanied by menaces, though the latter do not amount to actual assault, may in some instances be sufficient to arouse the fears of a reasonable man that his life is in danger, or that a felony is about to be perpetrated upon him." When these two portions of the charge, given almost together, are read as a whole, it is manifest that the giving of the instruction excepted to does not constitute a valid ground for a new trial.

*Judgment affirmed. All the Justices concur, except*
Russell, C. J., and Atkinson, J., who dissent from the ruling in the first division of the opinion. They dissent also from the ruling in the fourth division, upon the authority of the cases of *Cumming* v. *State,* 99 *Ga.* 662 (27 S. E. 177), and *Clay* v. *State,* 124 *Ga.* 795 (53 S. E. 179).