MacIntyre, P. J.
(After stating the foregoing facts.) Margaret Hodges was tried and convicted, in the Criminal Court of Fulton County, for the offense of operating a criminal lottery alleged to have been committed on October 25, 1949. It was further alleged that the date was an essential element in the crime committed. The jury were authorized to find from the substantive evidence that there was a lottery in operation in Fulton County, Georgia, known as the number game, on October 25, 1949; that this lottery was owned and operated by persons known as operators, sometimes called bankers; that the operator hired agents known as pick-up men, writers, station agents, and office workers; that there was such a number game in operation in Fulton County, Georgia, on October 25, 1949; and that on such date Mrs. Hodges participated in the running of such lottery as a banker or owner-operator thereof.
A. D. Quinn testified for the State against the defendant, as an accomplice in the offense for which he was on trial. His testimony was damaging. Counsel for the defense, in cross-examining a police detective, Mann, also a witness for the State, asked whether or not Quinn had been prosecuted for the lottery in which he contended he and the defendant engaged, for the purpose of attempting to discredit Quinn’s testimony by showing that he had been granted immunity from prosecution. During the examination of this officer, it appeared that he had testified against the witness Quinn on a hearing for revocation of a conditional pardon under a previous sentence, but had not testified on any charge growing out of the present offense in a new proceeding. During such cross-examination, the defense counsel and the presiding judge engaged in a colloquy. The defense counsel made the following statement: “The fact is that Quinn has never been prosecuted before Your Honor for the crime the *619 officers charge him with.” The trial judge explained: “The question to be passed on there is whether or not if a man has a conditional pardon conditioned on his not violating the law again, and then he is brought before the court and evidence adduced to show he has violated the law and his conditional pardon is revoked, and he is required to serve the 24 months, whether or not it is prosecuting him or not, which is for the court to say.” The defense counsel asked: “Does the court contend that this accusation against this man, charging him with committing this crime in 1949 is still open in this court, or that, if he had a conditional pardon and same was revoked, it would settle this case?" The presiding judge replied: “No, sir, but you are asking about when the court revoked a conditional pardon for a particular offense, and it is not customary to prosecute the man on that offense if the court uses it for revocation of the suspended sentence.” Thereupon the defense counsel made a motion for mistrial and urged: “I make a motion for a mistrial on the ground that since the court has stated the facts it has to the jury, ‘that it is not customary to prosecute him,’ that it is an expression of opinion by the court taking away from the jury the right to pass on it and is so highly prejudicial for the court to say it that it can not be overcome.” The trial court overruled the motion to declare a mistrial and stated: “Mr. Barrett asked me the question if I contended a certain thing and I answered it, and if he asked the question and I answered it, I don’t think it is proper for counsel to take advantage of it as grounds for a mistrial and I overrule the motion for mistrial.” The court then stated to the jury: “Gentlemen of the jury, I had no intention of making a statement prejudicial to the jury and withdraw the statement I made to Mr. Hayes which he made a motion for mistrial on, and ask you not to give it any consideration in arriving at your verdict in this case.”
In the colloquy between counsel and the court, counsel asked the court a question relating to an incidental matter. The court’s answer was addressed to counsel and, although explanatory, was pertinent to the question propounded, and no reversible error appears. See, in this connection, Perry v. Butt, 14 Ga. 699, 705 (2); Crawford v. State, 4 Ga. App. 789 (6) (62 S. E. 501); Bass v. State, 4 Ga. App. 844 (2) (62 S. E. 540); Jones v. Pope, 7 Ga. App. 538, 540 (67 S. E. 280).
*620 The accusation charging lottery was in five counts. The court directed a verdict on counts 3 and 4. The jury found the defendant guilty on count 2, and not guilty on counts 1 and 5. The accusation stated that the alleged date of the commission of the crime charged in each of the counts therein was an essential element of the crime charged in each count. It will be noted that the crime charged and on which the defendant was convicted was the one on October 25, 1949, in count 2. An officer testified that he had gone to arrest the defendant Hodges on November 7, 1947, in connection with the operation of a lottery known as the number game, at the Biltmore Hotel in Fulton County, Georgia; that on that occasion he and another officer went to the Biltmore Hotel and went up to a room where Mrs. Hodges, the defendant, and a Mr. 'Doremus were in the room together, and had “an adding machine, a quantity of lottery tickets, and tape.” The defendant denied knowing anything about what was found in the room and said she was just called up there by a Mr. Doremus. The officer further testified that the room was registered in the name of Mr. Doremus of Tennessee. A case was made against the defendant and Mr. Doremus, but he jumped his bond and was never tried. She was tried and acquitted. The court allowed in evidence the adding machine, the lottery tickets and tape, all of which paraphernalia are used in the number game, over the objection of the defendant that they were irrelevant and prejudicial to the defendant, and further that she had already been tried and acquitted of this crime. In Taylor v. State, 174 Ga. 52, 67 (162 S. E. 504), it was said: “Nor is the contention sound that this evidence should have been ruled out because it relates to other alleged offenses for which this defendant had been previously tried and acquitted. While the defendant had been tried and acquitted of previous alleged offenses, and the verdict of not guilty may have indicated that there was not sufficient evidence to convince the jury beyond a reasonable doubt of his guilt, still that acquittal would not necessarily exclude the evidence, because that evidence may tend to illustrate the acts of the defendant as shown in the transaction for which he is now on trial, and may be considered in connection with the later evidence, and may throw a flood of light on this later evidence, though of itself insufficient to authorize *621 a verdict of guilty.” See cases cited. The State introduced accusations charging the defendant with playing the lottery number game in 1941 and 1942, upon each of which there was a verdict of guilty. A Mrs. Lee testified that she was an accomplice of the defendant in playing the lottery games charged in such accusations, and that she was also found guilty as a participant in such lottery games in 1941 and 1942. It will be again noted that, as stated above, the defendant was found in the room in the Biltmore Hotel with Mr. Doremus in 1947, and lottery paraphernalia were found there. Mrs. Lee testified that she was an accomplice of the defendant in 1941 and 1942 in the lottery business. She likewise testified that she was the defendant’s accomplice on October 25, 1950, the alleged date of the crime for which the defendant was found guilty in the instant case; and also testified that she was an accomplice during the entire month of October, 1950, except on Sundays and holidays, •on which the lottery did not function, and she specifically testified that she was such on October 3, 1950. Under the facts of this case we think that it was competent to show similar lotteries which were operated according to a similar plan, that is, by drawing numbers, etc., in the same county, in order to show a general plan to amass property by an unlawful scheme and fraud. It was well said in Lee v. Miami, 121 Fla. 93 (163 So. 486, 101 A. L. R. 1115): “Experience has shown that the common forms of gambling-are comparatively innocuous when placed in contrast with the widespread pestilence of lotteries. The former are confined to a few persons and places, but the latter infests the whole community; it enters every dwelling; it reaches every class; it preys upon the hard earnings of the poor; and it plunders the ignorant and simple.” It is also conducive to the corruption of public officers, and what is quoted above is particularly applicable to a lottery known as the number game. The form of lottery described in the evidence in this case as a number game is a scheme and device to ensnare the public regardless of age, class, or station. In Henderson v. State, 95 Ga. 326, 328 (22 S. E. 537), it seems that the Supreme Court of this State recognized a substantial distinction between lotteries and offenses of gaming proper, and that it was the purpose of the lottery statute to “suppress lotteries,” recognizing that this plan or *622 scheme known as lottery is a general plan or scheme to amass property by fraud, and that this widespread, baneful influence infests the whole community.
The evidence of former similar transactions, criminal or otherwise, here in question was admissible to show the general plan that the defendant was using in amassing property by fraud. It tended to illustrate, characterize, and explain the acts in the instant case as being a part of such general plan to so amass property by fraud. It was also admissible, under the facts of this case, to rebut the defendant’s contention to the jury that she did not know that the lottery paraphernalia were in the room in question, which was rented by her on the occasion in question. See, in this connection, Williams v. State, 62 Ga. App. 679, 681 (9 S. E. 697); Thrasher v. State, 68 Ga. App. 820, 823 (24 S. E. 222); Walker v. State, 69 Ga. App. 375, 376 (25 S. E. 587); Suber v. State, 176 Ga. 525, 532 (168 S. E. 585); Bacon v. State, post, p. 630 (70 S. E. 2d, 54); Mason v. State, 42 Ala. 532, 539. The purpose for which such evidence could be considered was properly restricted by the trial judge in his charge to the jury.
Three witnesses testified directly that they participated with the defendant in the running of the number game, on October 25, 1949, for which the defendant was here found guilty. There was also circumstantial evidence to show her guilt of such crime. The evidence authorized the verdict.

Judgment affirmed.

Sutton, C. J., Gardner and Worrill, JJ., concur. Felton and Townsend, JJ., dissent.