COURT OF APPEALS,
February 25, 1913.

# THE PEOPLE v. WILLIAM LINGLEY

(207 N. Y. 396.)

(1.) MURDER—HOMICIDE COMMITTED BY DEFENDANT WHILE ENGAGED, WITH ANOTHER IN COMMITTING OR ATTEMPTING TO COMMIT CRIME OF ROBBERY.

The victim of the homicide of which the appellant was found guilty was shot to death by one of two men who visited his saloon for purposes of robbery, in which both actively participated, and while they were engaged in the commission of that crime. *Held,* that the proof for the People amply justified the jury in finding that the perpetrators of the robbery were guilty of murder in the first degree on the ground that while engaged in committing or attempting to commit a felony they had killed a human being.

(2.) SAME—PRESUMPTIONS—UNLESS THERE IS EVIDENCE FOR, OR AGAINST CHARACTER OF DEFENDANT THE LAW PRESUMES NOTHING ABOUT IT.

On the trial of a person for crime there is no presumption, one way or the other, upon the question whether the general character of the accused is good or bad. While nothing is to be taken against the defendant by reason of the non-introduction of evidence on his part to establish his good character, there is no rule which compels the jury to conclude that his character is good in the absence of any proof on the subject. Under such circumstances the law does not presume anything about it and the court is not bound to charge that the law presumes the character of the defendant to be good. (*People v. Pekarz,* 185 N. Y. 470, 483, followed.)

APPEAL from a judgment of the Court of General Sessions of the Peace in the county of New York, rendered June 7, 1912, upon a verdict convicting the defendant of the crime of murder in the first degree.

The facts, so far as material, are stated in the opinion.

*James D. McClelland* and *Charles Sullivan* for appellant.

*Charles S. Whitman, District Attorney (Robert C. Taylor of counsel), for respondent.*

WILLARD BARTLETT, J.   The victim of the homicide of which the appellant has been found guilty was one Patrick Burns, the keeper of a liquor saloon in the borough of the Bronx, who was shot to death in his bar room in the night time of February 10th–11th, 1912.   Two strangers, a large man and a small man, visited the saloon for purposes of robbery; and while engaged in the commission of that crime, in which both actively participated, one of them killed Burns.   No evidence was introduced in behalf of the defense; and the proof for the People amply justified the jury in finding that the perpetrators of the robbery were guilty of murder in the first degree on the ground that while engaged in committing or attempting to commit a felony they had killed a human being.

It was essential to the People's case, of course, to identify the defendant as one of the two strangers; and the principal point made in his behalf on this appeal, so far as the facts are concerned, is that the identification was insufficient to support the verdict.   I think otherwise.   The bartender, who was present on the occasion of the robbery and shooting, testified positively that the larger of the two strangers was the defendant. He was also emphatically identified by an employee of the Edison Electric Company, who saw the two strangers on the premises and left them there a short time before the homicide occurred.   It is true that a companion of this witness who was there and went out with him, was not able to say positively whether either of the two strangers whom he saw and left in the saloon was present in court at the trial; but his inability thus to identify the defendant is not very significant as against the explicit identification by the other witnesses who have been mentioned, and the strong confirmation afforded by the voluntary confessions of the defendant himself.   The settled principles which

regulate the exercise of our jurisdiction to review the facts on an appeal from a judgment of death forbid us from interfering with this verdict on the ground that it was against the evidence or the weight of evidence, or without sufficient support in the evidence.

There is only one question of law in the case which requires notice and that arises on an exception to the refusal of the learned trial judge to charge the following request:

" Mr. McClelland [counsel for defendant] : I ask your Honor to charge that the law presumes the character of the defendant is good."

If this request embodies a correct statement of the law it might well be urged upon us that the refusal so to instruct the jury was an error seriously prejudicial to the defendant.

In the case of People v. Pekarz (185 N. Y. 470, 483, 20 N. Y. Crim. 159) the trial judge was asked to charge that " in the absence of any testimony on the subject of the character of the defendant, presumption is that the defendant's character was good, prior to this offense," to which the judge responded: " Oh, there is no evidence against it at all.  I have said that to the jury already."  Counsel for defendant then explained that he meant that the presumption that the defendant's character was good must be considered by the jury.  The court declined to charge further on the subject and defendant's counsel excepted; but the court added: " There is no presumption against him at all.  The presumptions are all in his favor on that head."  This court held that there was no error to the prejudice of the defendant, saying that when no evidence had been given on the subject in his behalf his character was not in issue and he was not entitled to the instruction " that the presumption that his character is good must be considered by the jury."  In the *Pekarz* case, however, the remark of the trial judge to the effect that the presumptions were all in favor of the defendant on that head, i. e., the subject of good character,

was not quite equivalent to the absolute refusal to charge the request in the present case; and although that decision is to be deemed an authoritative expression of opinion upon the question under consideration, it must be conceded that there is highly reputable authority in other jurisdictions to the effect that in the absence of any evidence on the subject the law presumes the character of a defendant in a criminal case to be good. As these cases were not brought to our attention in the *Pekarz* case it is due to the defendant to consider them here.

The most carefully considered decision in support of this doctrine is Mullen v. United States (106 Federal Reporter, 892) in the United States Circuit Court of Appeals for the Sixth Circuit in 1901. The plaintiffs in error were indicted for a violation of the election laws of the United States. At the conclusion of the charge their counsel called the attention of the court to an instruction which they had requested to the effect that the defendants were presumed to be persons of good character and that that presumption prevailed during the progress of the case. To this the court responded: " I do not think that the jury should be told that the defendants are presumed to be persons of good character, but they are presumed, as the court had told the jury, whether of good character or bad character, to be innocent until their guilt has been established to the exclusion of a reasonable doubt by testimony." An exception was taken to this ruling, and before the jury retired the defendants asked for the following further instruction, which was refused: " You are charged that the law presumes the good character of the accused, and such presumption is to be considered as evidence in favor of the accused in considering the question of the guilt or innocence of them or any of them." The defendants excepted to the refusal of the court to charge this request.

The Circuit Court of Appeals, consisting of Judges LURTON, DAY and SEVERENS, reversed the judgment and granted a new

trial on the ground among others that it was error for the trial court to refuse to charge as requested upon the subject of character. The opinion was written by Judge DAY, who began by stating that the exceptions " raise the question whether in a criminal trial in a court of the United States, where no testimony has been offered as to the previous good character of the accused, a presumption of such good character exists in favor of the accused, of which upon a request to that effect the jury should be instructed."

Circuit Judge DAY went on to say that he found no difference of opinion in the well-recognized text writers upon the question whether such a presumption exists. " All assert that a presumption exists in favor of the accused in the absence of testimony that he had a good character previous to the time of the alleged commission of the offense in question. It is true that the government may not attack the character of the accused until he puts it in issue by affirmative testimony on his part. He is not obliged to do this, but may, if he sees fit, rest upon the presumption raised by the law." The judge then quotes from 1 Bishop's New Criminal Procedure (4th edition, § 1112, paragraph 2) and from Underhill on Criminal Evidence (§ 76). The opinion of Judge DAY continues as follows: " It is true that there are cases which hold that, where there is no testimony upon the subject, the court is not obliged to say anything to the jury, either one way or the other. But if the presumption exists, in favor of the accused, it cannot be available to him unless he can have an instruction advising the jury of this proposition of law. This presumption, to the extent to which it exists, though less important, is as much his right in a criminal trial as the presumption in favor of his innocence. It is in consonance with the general principle of law that a man is presumed to stand ordinarily well, and to have at least the average qualities of morality and good conduct."

The statements of the text writers to which Judge DAY referred are as follows:

. " The doctrine is that the defendant is presumed to be innocent, and his character to be at least of ordinary goodness." (1 Bish. New Crim. Proc. [4th ed.] § 1112, par. 2.)

" The character of the accused means his reputation; *i. e.*, the general consensus of opinion regarding him, based on his deportment and conduct, which is held by his neighbors, friends and acquaintances. The accused may always prove his good character. If, however, he offers no evidence on this point, the law presumes he has a fair and respectable, if not, indeed, an excellent character; and does not permit any presumption of guilt to arise from his silence, or from his failure to offer evidence on this point. That his character is bad can never be presumed, nor should the prosecution be permitted to comment unfavorably upon this omission." (Underhill's Criminal Evidence, § 76).

To these may be added a sub-rule laid down by Mr. Lawson in his well-known treatise on the Law of Presumptive Evidence, under the general rule that the law presumes the innocence of a person charged with crime until the contrary is proved beyond a reasonable doubt. "*And good character is presumed.*" (Lawson on Presumptive Evidence [2d ed.], 520.)

The only authority cited by Mr. Lawson in support of this sub-rule is People v. Johnson (61 Cal. 142). This was a murder case in which the defendant asked the court to instruct the jury that " where no evidence of the character of the defendant is introduced, his character is presumed to be of ordinary fairness in the traits involved in the crime with which he is charged, and that it is a fact to be considered by them in arriving at their verdict in connection with all the other facts in the case." Two of the three judges who heard the appeal held that there was no error in refusing to give this instruction because the substantial point covered thereby was fully embraced in other instructions given. The third member of the court McKINSTRY, J., however, said: " And the instruction as to

character was properly rejected. The prosecution cannot attack the character of a defendant until the defense has introduced evidence to establish his good character. When a defendant, charged with a criminal homicide, has been shown to be a quiet and peaceable man, his character is to be considered by the jury in connection with the evidence, and may weigh in the balance so as to create a reasonable doubt of his guilt. If, in the absence of evidence on the subject, the presumption of good character is to weigh as much in his favor as affirmative proof of it, the necessity of proving good character would never arise; and the prosecution would frequently be in a worse case than if evidence of good character had been given—since the prosecution would be debarred from introducing evidence to overcome the presumption."

I may remark here in passing that this dissenting opinion of Mr. Justice McKinstry is a correct statement of the law, according to the weight of authority, as I view it.

Another California case to the same effect is People v. Fair (43 Cal. 137, 149), where it was said in the opinion of the court that the law assumes the prisoner to possess a good character—good in the sense of not being bad—in cases in which no evidence upon the subject of general character is offered. "The presumption of a character of ordinary fairness, with which the law clothed her [the defendant] for the purposes of the case, was one to the benefit of which she was entitled, and which could not be put in peril unless, discarding the presumption thus afforded her, she had elected to put it distinctly in issue, and so constitute it a fact to be determined by the jury as other facts in issue were to be determined. * * * Until the prisoner thus initiates the inquiry the prosecution are bound to assume it to be, as the law presumes it, ordinarily fair, and must establish her guilt, if at all, in the face of this presumption, and despite the benefit it affords her."

An *obiter dictum* in Ackley v. People (9 Barb. 609) is also sometimes relied upon to support the presumption of good character. In that case it was correctly decided that the failure of the defendant in a criminal case to introduce proof of his good character can never be taken into account against him; but the General Term went further and said that " the more recent cases hold that where no proof of general character is given, the law assumes that it is of ordinary fairness."

On the other hand, we are not without textbook and judicial authority in denial of the doctrine. No recent American law writer has achieved more distinction than Prof. John H. Wigmore of the Northwestern University, whose elaborate treatise on the law of evidence is a worthy successor to the classic work of Greenleaf. This learned author expressly denies the correctness of the decision in Mullen v. United States (*supra*) to the effect that the good character of the accused is presumed. " This inconsistently gives him the untrammelled benefit of evidence which if he had introduced might have been disputed. What really happens, or ought to, is that the defendant's character is simply a non-existent quantity in the evidence." (1 Wigmore on Evidence, § 290, note.)

Two cases are cited to sustain this proposition. In Addison v. People (193 Ill. 405, 419), which was an indictment for assault with intent to commit rape, the judge was requested to instruct the jury that the law " presumes that the defendant has a good character and reputation as a law-abiding, peaceable citizen until the contrary is shown by the evidence, and it is not necessary for the defendant to prove his reputation in that respect. * * * The jury * * * must presume that he is a man of good character and reputation in that respect, and that, without any proof on the subject—and should take the good character of the defendant into consideration in making up their verdict." This instruction was refused and

the Supreme Court of Illinois held that the trial court was right in the refusal, saying: " Defendant had a right to put his reputation as a law-abiding citizen in issue if he saw fit. In such a case it would be a proper subject for evidence on each side. * * * Defendant did not choose to put his reputation in issue or prove that it was good, but sought by the instruction all the benefit of an affirmative finding of such fact without proof or an opportunity to combat the claim or prove the negative. If the instruction were the law, a defendant need never prove good reputation, but could take the benefit of proof which perhaps he could not make."

In Knight v. State (70 Ind. 375), which was a prosecution for assault with intent to murder, complaint was made by the appellant of the failure of the trial court to tell the jury that the character of the defendant for peace and quiet was presumed to be good until the contrary was shown. As to this, the Supreme Court of Indiana said: " In a criminal cause, the defendant's character is not taken into consideration, unless the defendant first introduces evidence in support of it. In that event, the question of character has to be decided upon the evidence, in the same manner as any other question in the cause." It was accordingly held that there was no error in omitting to give the instruction asked.

Most of the text writers and judges who have asserted the existence of the presumption of good character in favor of the accused have contented themselves with a dogmatic declaration that such is the law. Where it is attempted to support the proposition by argument, the theory usually advanced is that the alleged presumption forms a part of the presumption of innocence and is necessarily involved therein. That this cannot be so is manifest when we consider the contention in the light of the universally recognized rule that the prosecution may never introduce evidence assailing the general character of the accused unless he has first offered proof that his general

character is good. (People v. Hinksman, 192 N. Y. 421, 22 N. Y. Crim. 585.) The presumption of innocence in behalf of the defendant in a criminal case is always open to attack on the part of the prosecution. Indeed, throughout the trial, the case for the prosecution is aimed at the destruction of that presumption directly or indirectly. If the presumption of a good character were a part of the presumption of innocence, the prosecution would be at liberty to assail that presumption also, irrespective of the introduction of any evidence on the subject by the defendant; yet this the prosecution is not permitted to do anywhere. The rule " firmly and universally established in policy and tradition, is that the prosecution may not initially attack the defendant's character." (1 Wigmore on Evidence, § 57.)

This prohibition against any attempt to blacken the general character of the accused unless he opens the door by seeking to establish the excellence of that character is tantamount to a rule that the general character of the defendant in a criminal case, although revelant, may not be made an issue unless the defendant chooses to make it so. If in addition to this adequate protection against the possibility of undue prejudice, the defendant is also shielded by an unassailable presumption of general good character, the prosecution may be placed in a position of unwarrantable disadvantage. The defendant in every criminal trial will be entitled to have the jury instructed that the law presumes his general character to be good; while the prosecution cannot appeal to any evidence to overcome this presumption if the defendant has introduced none to support it. In other words, the accused may always have the benefit of a very influential presumption which he can invariably prevent the prosecution from rebutting at his own will. To hold that this alleged presumption of general good character exists would create, which compels the jury to conclude that his char- for by any considerations of justice or even extreme solicitude

on account of the difficulties which sometimes beset an accused person in establishing his defense.

The true doctrine, as it seems to me, is that there is no presumption, one way or the other, upon the question whether the general character of the accused is good or bad. As is well said by Prof. Wigmore (*supra*), "the defendant's character is simply a non-existent quantity in the evidence." While nothing is to be taken against the defendant by reason of the non-introduction of evidence on his part to establish his good character, there is no rule, such as the presumption contended for would create, which compels the jury to conclude that his character is good in the absence of any proof on the subject. Under such circumstances the law does not presume anything about it.

I think that in accordance with the views expressed in the case of People v. Pekarz (*supra*) the learned trial judge properly refused to give the instruction prayed for to the effect that the law presumed the character of the defendant to be good. There is no other question in the case demanding discussion, and I, therefore, advise an affirmance of the judgment.

CULLEN, Ch. J., GRAY, CHASE, CUDDEBACK, HOGAN and MILLER, JJ., concur.

Judgment of conviction affirmed.