28869.   BRYANT *v.* THE STATE.

DECIDED JUNE 17, 1941.   REHEARING DENIED JULY 28, 1941.

*John H. Hudson, E. Harold Sheats,* for plaintiff in error.

*John A. Boykin, solicitor-general, J. W. LeCraw, Daniel Duke,* contra.

MacINTYRE, J.   Raymond Bryant was indicted in thirteen counts for the offense of misdemeanor. Six counts were nol-prossed. A verdict of not guilty was directed on two counts, the defendant was acquitted on three counts, and convicted on counts 1 and 8 charging the offense of assault and battery on James Wilkes and Joe Otwell respectively. The maximum sentence was imposed. It is conceded that the evidence authorized the conviction with reference to James Wilkes and only the special grounds are insisted on. With reference to Joe Otwell both the general and special grounds are insisted on.

■  The jury were authorized to find from the evidence that a body of men, all members of the East Point Ku Klux Klan, took

it upon themselves to punish certain members of their community against whom they had grievances of some sort, or people whom they charged with improper conduct. The Klan had what they called a "secret grievance committee," and on this committee were a number of individuals among whom were Dan Eidson, W. T. Walton, Walter Forster, Henry Cawthon, and Raymond Bryant, the defendant in this case. Their plan of operations was, at a meeting of the committee to designate a certain individual against whom some member of the committee or the Klan had some personal grievance, such as the victim drank too much, or his conduct in the neighborhood was objectionable, or he was a member of a union, or the like. They would obtain fictitious warrants, and in the dead of night when people had retired and when the vigilantes thought they would be less likely to be detected, they would go to the homes of the victims, posing as officers of the law and exhibiting their warrants of arrest for some superficial charge of violation of law, and inveigle such persons from their homes into automobiles awaiting without, on the pretense of carrying them to the police station, but instead would carry them out of town on some designated lonely road or to some woods. Then the victims would be taken from the car, stripped of their clothing, handcuffed, forced to lie face down on the ground, and then "flogged" with a large leather strap or some other like instrument. After the bodies of the individuals were bleeding and suffering under the blows from their assailants, they were left to wander in the woods and find their ways back to town as best they could. Then these brave, courageous men of the night would get back into their automobiles and return to their homes, believing they had done the noble and righteous thing, but knowing their wrong, and wishfully thinking their practices would go unknown and unpunished. But the long arm of the law was not to be permanently inactive, and it finally reached out and brought to trial those who were charged with such violations of the criminal law. In the eyes of the law this was not merely an assault and battery upon the bodies of individuals, but on the contrary it was an assault upon the whole organization of the courts and the law and order of this State. With every stroke of the whip justice itself was being assaulted. If these individuals were guilty and were allowed to go unpunished, how could any citizen of this State be confident when the law-enforcing officers of

this State were being impersonated? The defendant and his cohort planned their attack and carried it out with organized precision. In affirming the verdict of the jury we might say that if the evidence produced by the State be the truth of the occasion, and the jury have seen fit to so declare it, the defendant might well be thankful that he has not suffered a conviction of a more serious offense. The evidence authorized the verdict.

■ "Conclusions by the trial judge upon preliminary and collateral issues, such as are made by a plea in abatement to an indictment, or a challenge to the array of the trial jurors, and a traverse to each respectively, can not properly be asserted as grounds of a motion for a new trial relating to the main and final issue as made by the indictment and the plea of not guilty." *Herndon* v. *State,* 178 *Ga.* 832 (174 S. E. 597). Where, in a criminal case such as this, the defendant seeks to have this court consider a complaint as to the challenge to the array of the trial jurors, he may invoke a ruling of this court (1) by excepting in the main or final bill of exceptions only, that is, without filing exceptions pendente lite, if he tenders his main or final bill of exceptions within twenty days from such ruling (Code, § 6-903); or (2) by tendering exceptions pendente lite before the final judgment (in this case an order overruling the motion for new trial), and have the same filed for the purpose of being made a part of the record as provided in Code, § 6-905; and when so made he may thereafter assign error in the main or final bill of exceptions on the pendente lite exceptions and on the rulings therein excepted to, in which event the defendant does not have to tender the main or final bill of exceptions until after the overruling of the motion for new trial, and then only within twenty days after the overruling of such motion.

Grounds 5 and 6 complain of improper remarks of one of the prospective jurors, while the jurors were being stricken, in voluntary response to a question on the voir dire, and of the response of the solicitor thereto. The objection was presented by challenge to the array (ground 5), and by motion for mistrial (ground 6). The defendant made a showing to the effect that the remarks were loud enough to be heard by a full panel of jurors sitting in the court-room. The State made a counter-showing that the remarks of the solicitor were not loud enough to be heard. The order of

the trial court shows that when the challenge to the array was presented the jurors were recalled to the court-room and were examined as to whether they had heard the remarks of the solicitor in reply to the remarks of the prospective juror as above indicated, and after waiting a sufficient length of time for any of the jurors to answer, and none having answered, the judge construed the silence as meaning that none had heard the remarks, and overruled the challenge to the array. The defendant thereupon made a motion for mistrial as indicated in ground 6. Whether the remarks were loud enough to be heard presented a question of fact, the judge was the trior thereof, and his finding is final unless he abused his discretion. No abuse appears, and there is no merit in either of the grounds.

■ The witness Jackson was allowed to testify in effect that he did not say anything to Cawthon on the night he was flogged about what had happened to him, but the next morning he spoke to Cawthon and Cawthon laughed at him, and told him to hush up and not to say any more about it, and if he did he might get a worse beating than he had already received. The defendant objected to this testimony on the grounds that it was irrelevant and immaterial, and that the conversation had not occurred in the presence of the defendant. It is contended that the evidence was prejudicial and hurtful to defendant because it tended to show that Cawthon was guilty of an offense similar to that with which defendant was charged, and tended to connect defendant with Cawthon, and influenced the jury to believe that Cawthon being guilty of an offense it was probable that defendant was guilty of a criminal offense. Other evidence for the State established the existence of a conspiracy and that the defendant and Cawthon were members thereof. "Where evidence offered by the State shows prima facie a conspiracy between several persons to commit a crime, acts and declarations of any of them in an attempt to conceal the crime, already perpetrated, are admissible against all." *Smith* v. *State,* 47 *Ga. App.* 797 (171 S. E. 578); *Nelson* v. *State,* 51 *Ga. App.* 207, 212 (180 S. E. 16). The defendant and his co-conspirators were shown to have flogged Jackson, and this testimony was not inadmissible for any of the reasons assigned.

■ The judge did not err in refusing to allow counsel for the defendant to interrogate a witness for the State on cross-examina-

tion as to whether he had ever been on the chain-gang. If the witness had ever been sentenced to the chain-gang, then the admission of such fact would depend on whether the offense for which he was convicted was a crime involving moral turpitude or not. And as to this the record would be the highest and best evidence. *Corley* v. *State,* 64 *Ga. App.* 841 (3) (14 S. E. 2d, 121).

■ Grounds 9, 10, 11, and 17 are controlled adversely to the contentions of the defendant by *Walton* v. *State,* 65 *Ga. App.* 124 (15 S. E. 2d, 455); *Eidson* v. *State,* 65 *Ga. App.* 119 (15 S. E. 2d, 462); *Forster* v. *State,* 65 *Ga. App.* 123 (15 S. E. 2d, 454).

■ The court did not err in admitting the testimony referred to in ground 12 or in ground 13, for other testimony to the same effect was introduced without objection, and the refusal to rule out the alleged illegal testimony was not reversible error. *Rylee* v. *State,* 44 *Ga. App.* 501 (3) (162 S. E. 292).

■ The admission of the evidence referred to in ground 14 does not disclose cause for reversal.

■ It was not error to allow the witness Lee to take the stand, on the ground that he did not answer any questions, but stood on his constitutional rights, and refused to answer any question on the ground that it would incriminate him, and that this silent witness greatly prejudiced the rights of the defendant. This witness did refuse to answer certain questions, but he also testified that he had seen the defendant riding around in a black "Hup," which was shown by other evidence to have been one of the cars used on the occasion when Otwell was flogged, and this was, we think, very pertinent in establishing the identity of the defendant in connection with the Otwell flogging for which he was convicted.

■ It was not error, as contended by the defendant in grounds 16, 18, and 19, to admit the evidence referred to therein. This testimony was with reference to the flogging of Otwell, for which the defendant was convicted, and was objected to on the ground that there was no evidence connecting the defendant with the flogging of Otwell. There was other evidence from which the jury were authorized to find that the defendant had participated in the flogging of Otwell, or had been in some way connected therewith, and it was not error to admit this evidence.

■ The defendant had put his character in issue, and it was not improper argument for the solicitor to comment on the fact

that the defendant, had sustained his good character only by his own statement. Furthermore, the judge instructed the jury: "If you understand from the State's counsel's argument, Mr. Boykin, that he was arguing the fact that the defendant did not produce witnesses to prove his good character, that therefore he had a bad character, you will disregard that. It was not proper argument if it was made." No reversible error appears.

■ Grounds 21 and 22 are but amplifications of the general grounds which have already been discussed.

■ The judge's charge to the jury in effect covered substantially the matters in the defendant's request set out in ground 24, and the judge did not err in not charging in its exact language.

■ The request to charge set out in ground 25 referred to matters of procedure, and not to a rule of substantive law, or to one involving any rights of the defendant, and the judge did not err in failing to charge as requested.

■ The requests to charge set out in grounds 26 and 27 were substantially covered by the charge as a whole, and the judge did not err in failing to charge in the language requested.

■ Where the defendant has put in issue his actual good character the judge did not err, as contended in ground 28, in charging: "After all, good character may of itself be sufficient to justify a reasonable doubt as to the guilt of the accused, or, considered in connection with the other evidence in the case, it may be sufficient to create such a doubt." The judge in effect charged the law with reference to the defendant's statement, that "In all criminal trials, the prisoner shall have the right to make the court and jury such statement in the case as he may deem proper in his defense. It shall not be under oath, and shall have such force only as the jury may think right to give it. They may believe it in preference to the sworn testimony in the case. The prisoner shall not be compelled to answer any questions on cross-examination, should he think proper to decline to answer." Code, § 38-415. Thus, having charged the rule of law generally as to what weight the jury were authorized to give the defendant's statement or any part thereof, the judge in effect told them that they could give to that part of his statement as to his good character such weight as they saw fit, and if they believed that his character was good that "good character may of itself be sufficient to justify a reasonable

doubt as to the guilt of the accused, or, considered in connection with the other evidence in the case, it may be sufficient to create such a doubt." The excerpt from the charge excepted to stated a correct principle of law applicable to the facts of this case, and no reversible error is apparent. See *Jones* v. *State,* 27 *Ga. App.* 574 (5) (109 S. E. 515); *Keys* v. *State,* 112 *Ga.* 392 (5) (37 S. E. 762, 81 Am. St. R. 63); *Wagoner* v. *State,* 52 *Ga. App.* 379, 380 (183 S. E. 209); *Daniels* v. *State,* 28 *Ga. App.* 721 (113 S. E. 109).

Nor do we think the judge erred, as contended in ground 23, in refusing to charge the following request: "The law presumes the character of the defendant to be good until the contrary is proven." Under our law, the defendant makes a statement to the jury, not under oath, but the jury may believe it in preference to the sworn testimony. The courts have held that the defendant, by his statement alone, may put his character in issue, in which event it is subject to attack by the State. So, in the instant case, the defendant elected to put his general *actual* character in issue by his statement alone, and the State introduced no evidence attacking his actual character thus put in issue.

It seems that in some instances a distinction has been drawn between actual good character, which must be established by evidence as any other fact is established, and presumptively good character, as where the defendant elects not to put his actual character in issue but relies solely on the presumption that every one is presumed to be of good character, or, as the writer thinks it would be more appropriately said, relies on the presumption that his character is not bad. The general rule is that the law presumes that every one's character is good, but this is a rebuttable presumption. Yet in a criminal case the law makes an exception to this general rule and says that it assumes the defendant to possess a good character—good in a sense of not being bad—and in cases where no evidence on the subject is offered the presumption of the defendant's good character can not be rebutted. Our Supreme Court has said: "Where the general character of a person accused of a crime was not attacked or put in issue, there was no error in refusing to charge that the character of the accused is presumed to be good unless shown to be otherwise by the evidence." *Mixon* v. *State,* 123 *Ga.* 581 (6) (51 S. E. 580, 107 Am. St. R. 149).

The State can not rebut or question the presumption of the defendant's good character unless he discards the presumption thus afforded and elects to put his actual character in issue by evidence or by his statement to the jury. The presumption of good character with which the law clothes the defendant for the purpose of the criminal case is one to the benefit of which he is entitled, and can not be put in peril unless, discarding the presumption thus afforded, the defendant elects to put his character distinctly in issue, and so constitutes it a fact to be determined by the jury as other facts are determined. Until the defendant elects to initiate the inquiry, the prosecution is bound to assume it to be what the law presumes it to be, that is, not bad. People v. Fair, 43 Cal. 137, 149. "While *pseudo*-presumptions frequently paraphrase rules in the substantive law of rights and liabilities, they may equally well metamorphose a rule in the law of procedure." 2 Chamberlayne, Modern Law of Evidence, 1462, § 1168. An instance of the latter rule is that the prosecution in a criminal case is prevented from presenting evidence of bad character for reasons rather of policy and humanity than because proof that the defendant has a bad character is not relevant to the issue. 4 Chamberlayne, Modern Law of Evidence, 4526 (footnote). "The rule is one of administrative policy. The source of it may be found in the principle of the law of English speaking people, which obtains in criminal actions, that the accused is presumed to be innocent until he is proven guilty. It would clearly be difficult to maintain this presumption of innocence in the minds of the jurors if testimony were given of a long list of crimes alleged to have been committed by the accused. A prejudice against him would naturally be aroused in the minds of the jurors if such a practice were followed." Id., 4525, § 3275. However, we do not think that in a criminal case a presumption of good character should be considered as being in the nature of evidence, as in the case of the presumption of innocence (*Richardson* v. *State*, 8 *Ga. App.* 26, 68 S. E. 518), which the State is allowed to rebut. The State can not attack the defendant's character unless he himself puts it in issue. His good character can not become an issue except at his option. But irrespectively of the defendant's evidence or his statement, the judge must charge the jury that the defendant is presumed to be innocent until he is proved guilty. But if the defendant makes no issue by the evi-

dence or by his statement, to say that the judge should charge the jury that the actual character of the defendant is presumed to be good, when under such circumstances the State would not be allowed to rebut such a presumption, does not seem to comport with a fair administration of justice. Such a charge would inconsistently give the defendant the untrammelled benefit of evidence which had never been introduced, and if it had been introduced might have been disputed.

Thus, if the State is bound by this administrative policy of humanity it must adopt or follow a rule of procedure in accordance therewith, and it can not rebut or attack the presumption of the defendant's good character unless he elects to put in issue his actual character by evidence, and when he has made such an election, he must stand and abide by it. The question is then presented as to what is his *actual* character, and this is to be determined from the evidence and the defendant's statement. It is a question of fact, depending for solution on the evidence in the same manner as any other factual question in the case, and it is not error to refuse to charge, in effect, that *in addition* to the evidence on the subject of the character of the defendant the law presumes that his character is good. McQueen *v.* State, 82 Ind. 72, 73; Knight *v.* State, 70 Ind. 375; Griffin *v.* State, 165 Ala. 29 (50 So. 962); People *v.* Lingley, 207 N. Y. 396 (101 N. E. 170, 46 L. R. A. (N. S.) 343); People *v.* Walls, 231 Mich. 110 (203 N. W. 656); Addison *v.* People, 193 Ill. 405 (62 N. E. 235). The cases relied on by the defendant are distinguishable. In *Bennett* v. *State,* 86 *Ga.* 401 (12 S. E. 806, 12 L. R. A. 449, 22 Am. St. R. 465), the defendant had not put his actual character in issue, either by evidence or by his statement, and it was held that the solicitor-general's argument that the defendant's character was bad because "he had a right to prove his good character and had not done so," was not a proper statement of the law and that such remarks were improper. It was there held that it would have been proper practice for the defendant's counsel to request the court to invoke a corrective measure, and charge the jury that the defendant's character was *not* bad because he had a right to prove his good character and had not done so. Thus, the jury would have understood that the rule of law laid down by the solicitor was not the correct one. In *Goggans* v. *Monroe,* 31 *Ga.* 331 (2), the court stated: "Defendant's counsel

on the trial, having argued to the jury that plaintiff's character was bad, it was error for the court to refuse to charge, on request, that the law presumes the character of a party to be good until the contrary is proven." We think the ruling just quoted is limited to the facts of that particular case, and we are fortified in our position by the language in the body of the opinion as follows: "Defendant's counsel having argued that plaintiff's character was bad, and this argument being likely to prejudice his case before the jury, he was entitled to the legal presumption that, in the absence of evidence proving the contrary, his character was good; and it was error in the court to refuse to charge, on request, that the law did so presume." It might be noted also that in the *Goggans* case the defendant's counsel had made an improper argument with reference to plaintiff's character, and plaintiff's counsel desired redress and sought to obtain it by a requested instruction to be given in the general charge, and the Supreme Court was in effect saying that the plaintiff was entitled to this corrective measure. See *Smoky Mountain Stages Inc.* v. *Wright,* 62 *Ga. App.* 121, 122 (8 S. E. 2d, 453). The judge did not err in refusing to give in charge the request set out in this ground.

■ The judge did not err in charging the jury on the subject of conspiracy. Where the evidence, as here, authorized such a charge, it was not inappropriate to charge the law of conspiracy merely because the indictment did not allege a conspiracy to commit the crime. *Bradley* v. *State,* 128 *Ga.* 20 (4) (57 S. E. 237); *Nelson* v. *State,* 51 *Ga. App.* 207, 210 (180 S. E. 16).

■ The testimony of the witness Bishop as to the conversation he had with the defendant and Floyd Lee concerning the flogging of Otwell was sufficient to show an incriminatory admission by the defendant, by his silence when such incriminatory statements were made in his presence, and the judge did not err in charging the law of incriminatory admissions. See *Ball* v. *State,* 47 *Ga. App.* 804 (171 S. E. 726); *McCormick* v. *State,* 176 *Ga.* 21 (166 S. E. 762); *Holt* v. *State,* 28 *Ga. App.* 758 (113 S. E. 49). Grounds 30 and 31 are therefore not meritorious.

■ Ground 32 is controlled adversely to the defendant by *Walton* v. *State,* supra.

■ Ground 33 complains that the defendant did not have an opportunity to poll the jury. The defendant has a legal right to

demand a poll of the jury but the demand should be made after the verdict and before the jury has dispersed. *Webb* v. *State,* 166 *Ga.* 218 (142 S. E. 898). These rules were not complied with in the instant case. This ground is not meritorious.

Ground 34 is controlled adversely to the defendant by *Eidson* v. *State,* and *Walton* v. *State,* supra.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*

ON MOTION FOR REHEARING.

MacINTYRE, J. Division 15 of the opinion has been withdrawn and rewritten, and the headnotes have been changed to conform thereto.

*Rehearing denied. Broyles, C. J., and Gardner, J., concur.*