A89A1929. WASHINGTON v. THE STATE.
(391 SE2d 718)

McMURRAY, Presiding Judge.

Defendant was indicted for murder. The case was tried before a jury and the evidence showed that defendant cut the victim's throat with a broken wine bottle, killing him, after a territorial dispute over sleeping rights in an abandoned van. Defendant was found guilty of the lesser included offense of voluntary manslaughter. This appeal followed. *Held*:

1. First, defendant contends the trial court erred in allowing State's witness Mark Pevey to testify as an expert "on the behavioral effects of alcohol at differing blood alcohol levels[, arguing that] Mr. Peevy [sic] simply was not qualified as an expert on that subject."

" 'To qualify as an expert . . . generally all that is required is that a person must have been educated in a particular skill or profession: his special knowledge may be derived from experience as well as study. (Cits.) Formal education in the subject at hand is not a prerequisite for expert status.' *Bowden v. State*, 239 Ga. 821, 826 (3) (238 SE2d 905) (cert. den. 435 U. S. 937) (1978); *Brown v. State*, 140 Ga. App. 160, 162 (5) (230 SE2d 128) (1976) (cert. den. 434 U. S. 819) (1977)." *Brown v. State*, 245 Ga. 588 (1), 590 (266 SE2d 198). "It is a matter within the sound discretion of the trial judge as to whether a witness has such learning and experience in a particular area to be deemed expert. *American Fire &c. Co. v. Grizzle*, 108 Ga. App. 496 (133 SE2d 400)." *Morrison v. State*, 147 Ga. App. 410 (1), 411 (249 SE2d 131).

In the case sub judice, Mark Pevey testified that he holds a degree in chemistry from Berry College; that he served as a quality control chemist for a private pharmaceutical company; that he has been trained to measure the amount of alcohol in a person's blood and that he has had the opportunity to observe the physical and behavioral characteristics of persons under varying degrees of intoxication. Mark Pevey also testified that he participated in a study of the behavioral and physiological effects of persons under the influence of alcohol at Mercer University's "Southern School of Pharmacy . . . in Atlanta . . . ." This evidence was more than sufficient to authorize the trial court's ruling as to the expert qualifications of Mark Pevey in the field of the physical and behavioral effects of alcohol on persons of varying degrees of intoxication.

2. In his second enumeration, defendant contends the trial court erred in allowing evidence of his participation in a "fight" which occurred about four to five hours before the victim's death.

Georgia Tabb testified at trial that defendant was the father of her "baby" and that "[a]bout 9:00, almost 10:00 o'clock" on the night of the victim's death defendant came to her house to see her and the baby and "to get his I.D." Georgia Tabb then testified that her brother-in-law and her "friend" informed her that she "didn't need to go . . ." to defendant; that the "friend" told defendant to leave and that she later "heard rumbling and stuff" and observed "Jason" and defendant fighting.

Georgia Tabb's sister's description of the altercation was more revealing. Jennifer Tabb testified that defendant came to her mother's house at "[a]bout 10:00 or 10:30" on the night of the victim's death and "knocked on the door. . . ." She then testified that Georgia Tabb's boyfriend, Jason, told defendant that "she [Georgia Tabb] wouldn't come to the door" and that, when Jason tried to close the door, defendant forced his way in and started fighting and threatening Jason.

"The state is entitled to inform the jury of all the circumstances surrounding the commission of the crime or crimes charged and we find no error in admitting [the above] evidence as part of the res gestae even though it may have incidentally placed the defendant's character in evidence. *Davis v. State*, 230 Ga. 902 (4) (199 SE2d 779) (1973)." *Chambers v. State*, 250 Ga. 856, 859 (2) (302 SE2d 86). The "fight" which took place at Georgia Tabb's and Jennifer Tabb's mother's house was relevant evidence of defendant's violent state of mind on the night of the victim's death. This enumeration is without merit.

3. Next, defendant contends the trial court erred in denying his motion for a mistrial after a law enforcement officer testified that he obtained a photograph of defendant from the Atlanta Police Depart-

ment's Identification section. Defendant argues that this testimony impermissibly placed his character in evidence.

"[A] mere reference to the fact that defendant's photograph was already in police records, without more, does not inject the defendant's character into evidence. *Woodard v. State*, 234 Ga. 901 (2) (218 SE2d 629) (1975); *Woodard v. State*, 155 Ga. App. 533 (1) (271 SE2d 671) (1980)." *Harris v. State*, 191 Ga. App. 399 (381 SE2d 602). This enumeration is without merit.

4. In his fourth enumeration, defendant contends the trial court erred in allowing the State to place his character in issue.

An examination of the trial transcript shows that the State's attorney asked defendant on cross-examination, "When you are drinking, don't you become very violent?" The State later used defendant's negative response as a reason to present rebuttal testimony of defendant's violent character when drinking.

" 'Code Ann. § 38-415 [now OCGA § 24-9-20 (b)] provides in part: ". . . no evidence of general bad character or prior convictions shall be admissible unless and until the defendant shall first put his character in issue." "In a criminal case the State can not rebut or question the *presumption* of the *defendant's good character* unless the defendant discards the presumption thus afforded and *elects* to put his *actual character* in issue by evidence or by his statement to the jury." *Bryant v. State*, 65 Ga. App. 523 (2) (16 SE2d 241) (1941).' *Favors v. State*, 145 Ga. App. 864 (1) (244 SE2d 902) (1978)." *Murray v. State*, 157 Ga. App. 596 (1) (278 SE2d 2).

In the case sub judice, defendant did not voluntarily place his character in issue. The State first brought defendant's character into question when it asked, "When you are drinking, don't you become very violent." However, under the particular facts and circumstances of the case sub judice we find it highly probable that the testimony regarding defendant's violent character when drinking did not contribute to the verdict. The erroneously admitted evidence was cumulative of a fact which had already been established, beyond a reasonable doubt. *Johnson v. State*, 238 Ga. 59 (230 SE2d 869); *Osborne v. State*, 193 Ga. App. 276, 277 (3) (387 SE2d 383).

The evidence in the case sub judice not only showed that defendant had been drinking and that he had a violent disposition on the night of the victim's death, but it showed without question that the victim died at the hands of defendant.

5. Defendant maintains in his fifth enumeration that "[t]he trial court erred in its charge on self-defense and erred in charging on mutual combat as these said charges contained elements that had not been covered in the charge conference and were a surprise to [defense] counsel and the charges related to matters not in evidence at the trial."

In the case sub judice, at the conclusion of the introduction of evidence court was recessed at lunch until "noon tomorrow." Upon the jury's leaving the courtroom, the trial court, in a charge conference with the parties present, "took up" the requested charges submitted by the State and by the defendant. In the conference, the trial court stated that "I will not use State's request No. 4 [on self-defense] for a number of reasons. I will charge on self-defense. I intend to use the self-defense charge in the pattern charge book."

During its charge to the jury the trial court charged almost verbatim the pattern jury instruction on "Justification" as contained in Suggested Pattern Jury Instructions by the Council of Superior Court Judges of Georgia, Volume II, Criminal Cases. This charge was also almost verbatim to the provisions of OCGA § 16-3-21 (use of force in defense of self or others).

Under the particular facts and circumstances of the case sub judice, we fail to see how defense counsel was surprised.

"The defendant . . . argues that the trial court erred in charging Code Ann. § 26-902 (b) [now OCGA § 16-3-21]. This Code section involves self-defense and subsection (b) contains the negative or exception to the self-defense theory. 'It is not usually cause for a new trial that an entire Code section is given. *Ford v. State*, 232 Ga. 511, 517 (12) (207 SE2d 494) (1944). Accord, *Highland v. State*, 127 Ga. App. 518 (1) (194 SE2d 332) (1972). This is so even though a part of the charge may be inapplicable under the facts in evidence. *Highland*, supra, at p. 519. *Rowles v. State*, 143 Ga. App. 553, 557 (239 SE2d 164) (1977) cert. den. Accord, *Pippin v. State*, 205 Ga. 316 (9), 323 (53 SE2d 482) (1949).' *Keller v. State*, 245 Ga. 522 (1) (265 SE2d 813) (1980)." *Stevens v. State*, 247 Ga. 698, 706 (13) (278 SE2d 398).

We hold that the trial court did not err in charging on justification or self-defense as the charge was an accurate statement of the law and applicable even though the defense contends the charge related to matters not in evidence.

6. In his final enumeration of error, defendant contends the trial court erred in denying his motion for directed verdict of acquittal, arguing that the evidence was insufficient to support the verdict. This contention is without merit.

The evidence showed that the victim died at the hands of defendant. This evidence, evidence that the victim was in a defenseless state of inebriation at the time of his death and evidence that the victim's throat had been mercilessly slashed several times was more than sufficient to enable any rational trier of fact to find defendant guilty, beyond a reasonable doubt, of the offense of voluntary manslaughter. OCGA § 16-5-2 (a); *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

*Judgment affirmed. Beasley, J., concurs. Carley, C. J., concurs*

*in Divisions 1, 3, 4, 5 and 6 and in the judgment.*

DECIDED MARCH 7, 1990.

*John A. Pickens*, for appellant.
*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Nancy Grace, Assistant District Attorneys*, for appellee.