## 5275.  WARD v. THE STATE.

1. To authorize conviction in a prosecution for the offense of keeping a lewd house it is not enough to prove the general reputation of the house, or of its inmates, or both; for the gist of the offense is that the house was kept for the practice of fornication or adultery, and the jury must be satisfied that acts of lewdness were practiced in it, and that it was maintained for the purpose of prostitution. The reputation of the inmates of the house for lewdness may be a circumstance to be considered by the jury, as tending to show the continuing character of the offense and in corroboration of other evidence of the essential fact that fornication or adultery was actually committed at the house. But proof of reputation for lewdness on the part of inmates of a house, without more, no more establishes the fact that the house in question is a lewd house, within the terms of the statute, than proof that the inmates of another house had a good reputation for virtue would disprove positive evidence that the house was used for purposes of prostitution.

2. Upon the trial of one charged with keeping and maintaining a lewd house it is competent to show the reputation for lewdness of other inmates of the house; but proof of the defendant's reputation for lewdness is not admissible, over objection, when the defendant's character has not been put in issue by the defendant. While the reputation of the inmates may illustrate or corroborate pertinent testimony to the effect that the house is maintained for purposes of prostitution, the character of the accused is, as in a trial for other crimes, presumably good, and not to be questioned in the first instance by the prosecution.

DECIDED DECEMBER 9, 1913.

Indictment for keeping lewd house; from Floyd superior court—Judge Wright. October 11, 1913.

*Eubanks & Mebane,* for plaintiff in error.

*W. H. Ennis, solicitor-general,* contra.

RUSSELL, C. J. The defendant was convicted of the offense of keeping a lewd house. It appears from the record that the defendant lives with her daughter in the outskirts of the City of Rome, and that the house she occupies has the general reputation of being a lewd house. According to the testimony her daughter, though quite young, has the general reputation of being a lewd woman. The defendant's son and one John Fowler also live at the house, which the defendant states she purchased with her own labor. There is no direct evidence that any act of adultery was committed in the house, nor any circumstance indicating that such an act was committed there, unless it can be assumed that Fowler was capable of, and, having had the opportunity by reason of his propinquity, was guilty of, the sexual act, with either the mother or the daughter. There is evidence of noise and disorder which might

authorize the conviction of the defendant of the offense of keeping a disorderly house; but the defendant was not accused of keeping a disorderly house, and she has been accused and convicted of keeping a lewd house. We think the learned trial judge erred in ruling upon the testimony to which objection was made, and that the pertinent evidence submitted by the State is insufficient to have authorized the conviction of the defendant.

Testimony as to the general reputation of the house for lewdness was properly admitted, and there was no objection to the testimony in regard to the general reputation of the defendant's daughter who lived with her at the house, and who was proved to have a bad reputation; but timely objection was made to the testimony of each of the witnesses who testified that the defendant herself had the reputation of being a lewd woman. In our opinion the court erred in not sustaining the objection to this testimony affecting the character and reputation of the accused. We recognize that there are cases in which the character of the accused may be proved by the prosecution, but, as a general rule, the character or reputation of one accused of crime can not be put in issue by the prosecution; and the evidence as to the reputation of the defendant in this case does not come within any exception to the rule. A defendant himself may tender proof of his good character, and the prosecution is then permitted to disprove such testimony and to prove that the accused is a person of bad character. As a general rule the presumption that one is of good character is included within the general presumption of innocence, or, if not included within it, it at least accompanies the presumption of innocence. Furthermore, the only pertinent question upon the issue raised by an accusation of crime and the defendant's plea of not guilty is whether the defendant is guilty of the crime charged; and if the evidence establishes his guilt, the character of the accused is entirely immaterial. In *Braddy* v. *Milledgeville*, 74 *Ga.* 516 (58 Am. R. 443), the Supreme Court was dealing with a case in which the municipality of Milledgeville forbade females of a designated class to walk or loiter on the streets during certain hours. To establish the offense it was absolutely essential to prove that one charged with a violation of this ordinance belonged to the class upon which alone the ordinance operated; and proof of the character of the individual was of course pertinent and relevant. In the case, however, of an accusa-

tion of keeping a lewd house we see no reason why the general rule, which forbids the prosecution to put in issue the general reputation of the accused, should not be followed. The character of the house, the character of the inmates, and various other circumstances may illustrate what might otherwise be doubtful in the proof that the house was used for the practice of fornication or adultery and actually maintained for purposes of prostitution, but they could not do more than this. The fact that the accused had a spotless reputation for physical virtue would not show that she did not actually entertain such cupidity or lewdness of mind as impelled her to rent her rooms for immoral purposes. A eunuch might not have a reputation for lewdness, and yet he might through others maintain a house of prostitution. Proof as to the reputation of the house and of its inmates is admissible as circumstantial evidence, just as other physical objects and surroundings would be admissible, but we see no reason why the reputation of the accused should any more be subject to attack, where the charge is of keeping a lewd house, than if the offense charged were a larceny, a robbery, or a burglary. And certainly, in the trial of a person for any one of these three offenses, it would not be held that the offense might be proved by the introduction of evidence that the accused had a general reputation of being a thief, a robber, or a burglar.

We do not think the evidence in the present case was sufficient to authorize the conviction of the defendant. There is no circumstance which, to the exclusion of every other reasonable supposition, could satisfy the jury that the house was used for the practice of fornication or adultery. Even if it had been proved that a single act of immorality such as referred to above was committed, this alone would not have been sufficient to show that the house was kept or maintained for that purpose; though had there been such proof, we think the circumstances and the reputation of the defendant's daughter, and of the house, might have supplied sufficient corroboration to sustain the charge, by authorizing the inference that what was once done was, in all human probability, repeated. The incriminatory proof in this case is confined to the matter of reputation, and, as was held in *Coleman* v. *State,* 5 *Ga. App.* 366 (63 S. E. 244), and in *Smith* v. *State,* 13 *Ga. App.* 241 (79 S. E. 51), this alone is insufficient to authorize conviction. There was evidence that men were seen to go to this house by day and by night,

and that there was some boisterousness and other noise likely to disturb the neighborhood.    This might have authorized a conviction of the statutory offense of keeping a disorderly and ill-governed house (Penal Code, § 383), because the defendant admitted that it was her house and in her charge; but the mere fact that men went to the house and came away under the influence of liquor, and during their stay were noisy and boisterous, would as reasonably suggest the inference that they visited the house to obtain intoxicating liquor, in violation of law, as that their visit was with the intent to be guilty of immoral practice, which ordinarily is not accompanied by much noise.

Evidence of the general character of the inmates of the house is merely corroboratory evidence, and is of itself insufficient to authorize conviction.    The point can well be illustrated by the case of numerous reformatory institutions which a progressive and most commendable philanthropy is attempting to maintain.    A case can be conceived of where all of the inmates except the matron might be girls or women whose reputation for chastity was bad; and in the work of reformation it might be economical, convenient, or otherwise desirable to use a house which had not borne a good reputation.    If the rule were as contended on the part of the State in the present case, those at the head of each of these institutions could very promptly be convicted of keeping a lewd house on proof of the general reputation of the inmates.

It may be that the relations of John Fowler with one of the females involved in this case are not beyond question, but certainly there is no evidence to sustain that suggestion.    So far as appears from the record, John Fowler may be a close relative, a boy below the years of puberty, or an old man, senile and ineffective or impotent.    If the evidence showed that John Fowler was a normal male of mature years, the presumption referred to in *Gardner* v. *State*, 81 *Ga.* 144 (7 S. E. 144), would apply.

*Judgment reversed.*