## 67830. PHILLIPS v. THE STATE.

Pope, Judge.

Jimmy Lee Phillips was convicted of robbery by intimidation. On appeal he contends the trial court erred by denying his motions for a continuance and by allowing the State to introduce a record of a prior conviction to show his bad character. *Held*:

1. As to appellant's first two enumerations citing as error the trial court's denial of his motions for continuance, our review of the record discloses no abuse of the trial court's discretion in these matters. See generally *Gallimore v. State*, 166 Ga. App. 601 (1) (305 SE2d 164) (1983), and *Nix v. State*, 157 Ga. App. 406 (1) (277 SE2d 768) (1981).

2. Appellant testified that when the robbery in question occurred he was at his aunt's home in Deerfield, Florida. When his counsel asked appellant why he had gone to Florida, he answered that he was on parole and had violated his parole. On cross-examination the prosecuting attorney was allowed, over objection, to have appellant verify his signature on a certified copy of a prior conviction for armed robbery, and to introduce the document into evidence.

OCGA § 24-9-20 (b) provides, in pertinent part: "If a defendant . . . wishes to testify . . . he may so testify in his own behalf. If a defendant testifies he . . . may be examined and cross-examined as any other witness, except that no evidence of general bad character or prior convictions shall be admissible unless and until the defendant shall have first put his character in issue." "As a general rule the presumption that one is of good character is included within the general presumption of innocence, or, if not included within it, it at least accompanies the presumption of innocence. Furthermore, the only pertinent question upon the issue raised by an accusation of crime and the defendant's plea of not guilty is whether the defendant is guilty of the crime charged; and if the evidence establishes his guilt, the character of the accused is entirely immaterial." *Ward v. State*, 14 Ga. App. 110, 111 (80 SE 295) (1913). A jury is forbidden, "although they have . . . evidence of the character and nature of the defendant, to convict him 'upon general principles,' as that expression is sometimes used in general parlance." *Green v. State*, 172 Ga. 635, 640 (158 SE 285) (1931). Thus, no evidence of a criminal defendant's general bad character or prior convictions shall be admissible against him at trial unless and until such defendant shall have first put his character in issue. See OCGA § 24-9-20 (b). It follows that the State cannot rebut or question the presumption of the defendant's good character unless the defendant discards the presumption thus afforded and elects to put his actual character in issue by evidence of other witnesses or by his own testimony. See *Murray v. State*, 157 Ga. App. 596 (1) (278

SE2d 2) (1981).

A problem similar to that presented here was addressed by the Supreme Court in *O'Neal v. State*, 239 Ga. 532 (2) (238 SE2d 73) (1977), in which a defendant explained why he fled from the site of an attempted robbery. He stated he was an escapee from a half-way house and feared being recognized by the police. Cross-examination brought out a prior criminal record. It was held that "[u]sually the defendant in a criminal case 'opens the door' to character evidence by claiming to have good character. In such cases, his prior criminal record is then admissible for impeachment purposes. [Cits.] Here the defendant did not assert good character but admitted facts showing lack of good character. Where the defendant seeks to explain flight or concealment by referring to his criminal record, he will not be heard to contend that undue prejudice results when the [S]tate examines him concerning that record. [Cit.]" Id. at 533. Therefore, once appellant placed in evidence his prior parole, it was permissible on cross-examination to question him as to the specific event which gave rise to that testimony. *Brown v. State*, 237 Ga. 467 (2) (228 SE2d 853) (1976). Because the State was authorized in this case to inquire into the basis for his parole, appellant could not have been prejudiced by the introduction of the conviction which gave rise to the parole.

It is obvious from the cases in this court and in the Supreme Court that the ways in which a criminal defendant may "put his character in issue" are many and varied. See, e.g., *McDaniel v. State*, 248 Ga. 494 (3) (283 SE2d 862) (1981); *Brown v. State*, 242 Ga. 602 (3) (250 SE2d 491) (1978); *O'Neal v. State*, supra; *Shepherd v. State*, 239 Ga. 28 (2) (235 SE2d 533) (1977); *Brown v. State*, 237 Ga. 467, supra; *Darden v. State*, 236 Ga. 897 (2) (225 SE2d 904) (1976); *Lanham v. State*, 233 Ga. 249 (1) (210 SE2d 770) (1974); *Holloway v. State*, 164 Ga. App. 589 (2) (298 SE2d 296) (1982); *Walls v. State*, 148 Ga. App. 112 (1) (251 SE2d 103) (1978); *Stephens v. State*, 144 Ga. App. 779 (2) (242 SE2d 371) (1978); *McKenzie v. State*, 8 Ga. App. 124 (2) (68 SE 622) (1910); *Henderson v. State*, 5 Ga. App. 495 (3) (63 SE 535) (1909).

There exists an obvious conflict between the holding of this court in *Holloway v. State*, supra, and the holding in *Carroll v. State*, 143 Ga. App. 796 (2b) (240 SE2d 197) (1977). We are now persuaded that the correct rule is set forth in *Scarver v. State*, 130 Ga. App. 297 (2) (202 SE2d 850) (1973): "Once the 'character door' is opened, it is opened for all evidence that bears on the defendant's character — convictions of crimes, guilty and nolo contendere pleas, juvenile offense[s], and incidents which illustrate the defendant's character. [Cits.]" The decision in *Holloway* is in accord with this rule; the decision in *Carroll* is not. Accordingly, Division 2 (b) of *Carroll v. State*, supra, is overruled to the extent it is in conflict with the rule set forth

in *Scarver*, supra. For the same reason, the recent decision of *Starling v. State*, 168 Ga. App. 680 (310 SE2d 234) (1983), is overruled.

*Judgment affirmed. McMurray, C. J., Deen, P. J., Banke, P. J., and Birdsong, J., concur. Carley and Benham, JJ., concur specially. Quillian, P. J., and Sognier, J., dissent.*

DECIDED JULY 16, 1984 —
REHEARING DENIED JULY 31, 1984 — 

*James H. Moore III*, for appellant.

*Hobart M. Hind, District Attorney, Britt R. Priddy, Assistant District Attorney*, for appellee.

BENHAM, Judge, concurring specially.

While I concur in the judgment of the majority opinion in this case, I cannot agree completely with all that is said in that opinion and therefore feel compelled to file this special concurrence.

At the outset, it is important to consider the reasons behind the general prohibition against the use of character evidence. "As a general rule the presumption that one is of good character is included within the general presumption of innocence, or, if not included within it, it at least accompanies the presumption of innocence. Furthermore, the only pertinent question upon the issue raised by an accusation of crime and the defendant's plea of not guilty is whether the defendant is guilty of the crime charged; and if the evidence establishes his guilt, the character of the accused is entirely immaterial." *Ward v. State*, 14 Ga. App. 110, 111 (80 SE 295) (1913). It is apparent from the quoted language that it is the fact that the defendant's character is immaterial to the question of guilt, coupled with the conjunction of the presumption of innocence and the presumption of good character, that gives rise to the long-standing rule that the character or reputation of a criminal defendant may not be put in issue by the State.

That is not to say that the character of a criminal defendant is *never* material. "Evidence of good character, when offered by the defendant in a criminal case, is always relevant, and therefore is always material; and if it is material, on our opinion it should go to the jury and have such weight as the jury see proper to give it. If it is material, it should be considered by the jury, not merely where the balance of the testimony in the case makes it doubtful whether the defendant is guilty or not, but where such evidence of good character may of itself generate a doubt as to the defendant's guilt. Good character is a substantive fact, like any other fact tending to establish the defendant's innocence, and ought to be so regarded by the court and jury." *Shropshire v. State*, 81 Ga. 589, 591 (8 SE 450) (1888).

Of course, fairness dictates that any fact the defendant is permitted to prove is subject to rebuttal by the State. "A defendant himself may tender proof of his good character, and the prosecution is then permitted to disprove such testimony and to prove that the accused is a person of bad character." *Ward v. State*, supra.

In my view, it is possible to harmonize most of the decisions of the Supreme Court and this court on this issue by considering the purpose for which character testimony, and especially testimony concerning other offenses or the absence of other offenses, is offered by a criminal defendant. When considered from that point of view, it may be seen that there are two circumstances in which the State may introduce evidence of unrelated and dissimilar criminal transactions involving the defendant and one circumstance in which the State may mount an inquiry into specific instances of prior offenses unrelated and dissimilar to the offense for which the defendant is on trial.

A. The classic situation in which the State is entitled to mount an attack on the character of the defendant by introducing evidence of unrelated and dissimilar criminal conduct is where the defendant has availed himself of the principle of law that "good character may of itself constitute a defense in behalf of an accused so as to generate reasonable doubt of guilt . . ." *Swett v. State*, 242 Ga. 228 (2) (248 SE2d 629) (1978). See *Sims v. State*, 84 Ga. App. 753 (2) (67 SE2d 254) (1951). When a defendant has offered evidence of his own good character either by his testimony or by testimony of witnesses appearing on his behalf, then it can be said that he has literally put his character "in issue." *Henderson v. State*, 5 Ga. App. 495 (63 SE 535) (1908). Compare *O'Neal v. State*, 239 Ga. 532 (238 SE2d 73) (1977), and *Ward v. State*, supra. That is so because the defendant has then requested that the jury decide whether he is a person of good character. The issue having been raised by evidence, entitling the defendant to a charge thereon (*Sims v. State*, supra), the State is then entitled to present evidence rebutting that offered by the defendant. That is the situation in which it may accurately be said that the defendant has "opened the character door," entitling the State to offer any evidence reflecting on the defendant's character. *Henderson v. State*, supra. See also *McKenzie v. State*, 8 Ga. App. 124 (68 SE 622) (1910). Compare *Burke v. State*, 159 Ga. App. 26 (282 SE2d 682) (1981); *Lindler v. State*, 149 Ga. App. 155 (253 SE2d 833) (1979).

B. The other class of cases in which the State is entitled to tender evidence of unrelated dissimilar criminal transactions is that in which the defendant has falsely denied past criminal conduct.

Under that circumstance, the State is entitled to impeach the defendant, as it would be entitled to impeach any witness who swore falsely, by showing the untruth of the statement. If a defendant denied ever having sold drugs, the State would be permitted to intro-

duce evidence of prior convictions for drug sales. *Murray v. State,* 157 Ga. App. 596 (278 SE2d 2) (1981). See also *McDaniel v. State,* 248 Ga. 494 (283 SE2d 862) (1981); *Shepherd v. State,* 239 Ga. 28 (235 SE2d 533) (1977); *Brown v. State,* 237 Ga. 467 (228 SE2d 853) (1976); *Lanham v. State,* 233 Ga. 249 (210 SE2d 770) (1974); *Stephens v. State,* 144 Ga. App. 779 (242 SE2d 371) (1978). In such cases, the scope of the evidence the State may proffer is much narrower than in the genuine "character in issue" cases discussed above. In the impeachment situation, the State may introduce evidence reflecting negatively on the defendant's character only insofar as that evidence proves the falsity of specific testimony of the defendant. It should not be said in such cases that the "character door" has been opened, since the defendant's character has not been made an issue for the jury to determine. See *Lester v. State,* 145 Ga. App. 847 (244 SE2d 880) (1978).

C. The third category of cases in this area is that in which the State is not entitled to mount an unbridled attack on the defendant's character or credibility by introducing evidence of past wrongdoing, but is entitled to cross-examine a defendant who has offered testimony of the fact of past misdeeds.

The State's right to pursue details of an incident mentioned by a defendant on direct examination stems not from an opening of the "character door" or from the making of a statement susceptible of being disproved, but from the right of any party to conduct a thorough and sifting cross-examination of a witness with regard to any material issue. OCGA § 24-9-64. When a defendant has mentioned other offenses in the course of his testimony, as in the present case, that incident or circumstance is thereby rendered material. As such, it is an appropriate subject for cross-examination. However, if the defendant's testimony is not intended to establish the defendant's general character, the "character door" is not opened and the State's cross-examination is limited to the particulars of the incident or circumstance regarding which the defendant testified on direct examination. For instance, a defendant's testimony that he fled the scene of a crime not because of guilt but because he was on probation would authorize the State to elicit on cross-examination the details of that probation, including the facts of the underlying offense. *Darden v. State,* 236 Ga. 897 (225 SE2d 904) (1976). See also *Brown v. State,* 242 Ga. 602 (250 SE2d 491) (1978); *O'Neal v. State,* supra; *Lehman v. State,* 165 Ga. App. 15 (299 SE2d 88) (1983); *Holloway v. State,* 164 Ga. App. 589 (298 SE2d 296) (1982); *Burke v. State,* supra; *Lindler v. State,* supra; *Walls v. State,* 148 Ga. App. 112 (251 SE2d 103) (1978); *Scarver v. State,* 130 Ga. App. 297 (202 SE2d 850) (1973). However, the inquiry in such a case would not extend to the defendant's character generally or to other offenses not mentioned by the defendant

on cross-examination since such matters would be beyond the scope of cross-examination. On the other hand, a defendant who volunteers the statement that he has a criminal record gives the State an opportunity to question him regarding the particulars of his entire criminal history. See, e.g., *Holloway v. State*, supra. It stands to reason that since the right to examine the defendant with regard to past misconduct stems from the defendant's mention of such misconduct, the scope of the State's questioning on that subject depends on the scope of the defendant's testimony.

The categories I suggest here are consistent not only with the long-standing rule that a criminal defendant's character may not be attacked until he has made an issue of it, but also with the principles governing impeachment of witnesses by disproving facts stated and the principles governing the scope of cross-examination. In addition, these categories are consistent with a criminal defendant's right to be convicted on the facts of the particular case since the defendant controls the scope of admissible evidence concerning bad character or unrelated dissimilar criminal transactions by controlling his own testimony.

Unfortunately, cases dealing with this issue have blurred the distinctions between the categories I have perceived to exist in this area. However, my review of the cases cited by the majority and by the dissent in this case persuade me that the confusion most often exists with regard to the language used rather than the results. As can be seen from the analysis above, the results in the cases cited *are* consistent with the three categories, with the exception of *Carroll v. State*, 143 Ga. App. 796 (240 SE2d 197) (1977). Although I agree with the holding in Division 2 (b) of that case that the defendant had not placed his character in issue by evidence tending to show bad character, I disagree with the preceding holding that the State was not entitled to cross-examine one of the defendants concerning his presence in jail and the reasons for that presence. The matter was raised by the defendant's testimony, entitling the State to cross-examine on that issue. Accordingly, I would overrule *Carroll* only insofar as it holds that the State was not entitled to cross-examine the witness/defendant with regard to the circumstance of his presence in jail, a circumstance raised by the defendant's testimony. As to *Scarver v. State*, supra, reaffirmed by the majority as "the correct rule," I can agree that the statement is a correct statement of law, but not for all cases in which a defendant alludes to his own criminal past. The rule stated in *Scarver* applies properly to those cases I have identified as the first category, i.e., those cases in which the defendant has relied upon his *good* character. Therefore, I do not agree with the application of *Scarver* to cases in categories B and C, supra.

For the reasons stated above, it is my belief that the State was

entitled in the present case to question the defendant concerning his parole and its violation. That right in the State arose from the defendant's testimony that he was on parole and the State's concomitant right to ask him about the specific event which gave rise to that testimony. *Brown v. State*, 237 Ga. 467, supra. See also category C of this special concurrence. Our holding in *Starling v. State*, 168 Ga. App. 680 (310 SE2d 234) (1983), is distinguishable in that it prohibits introduction only of *unrelated* convictions which tend to show bad character. Here, the conviction introduced *related* to the issue voluntarily introduced by the defendant.

In summary, though I concur in the affirmance of the judgment in this case, I cannot agree to the overruling of *Starling*, supra, or with the broadened application of the rule stated in *Scarver*, supra, or with the basis on which the majority overrules *Carroll*, supra.

I am authorized to state that Judge Carley joins in this special concurrence.

SOGNIER, Judge, dissenting.

I respectfully dissent. On two occasions this court, in a full bench decision, has ruled that when a defendant's evidence tended to show *bad* character, his "good" character was not in issue so as to authorize rebuttal evidence of bad character by the State. *Carroll v. State*, 143 Ga. App. 796, 798 (2(b)) (240 SE2d 197) (1977); *Starling v. State*, 168 Ga. App. 680 (310 SE2d 234) (1983). With the exception of *Holloway v. State*, 164 Ga. App. 589, 590 (2) (298 SE2d 296) (1982), this court has consistently followed the rule set forth in *Carroll*, supra. *Lester v. State*, 145 Ga. App. 847, 849 (3) (244 SE2d 880) (1978); *Burke v. State*, 159 Ga. App. 26-27 (282 SE2d 682) (1981); *Starling*, supra. *Holloway* does not distinguish the facts in that case from those present in *Carroll*, *Lester* and *Burke*.

The State is allowed to introduce evidence of a defendant's bad character in two instances. First, to rebut evidence of *good* character introduced by the defendant, and secondly, to impeach a false statement made by the defendant. *Lester*, supra. Since there was no evidence of good character to rebut in the instant case, and no false statement to impeach, I am constrained to follow the rule enunciated by this whole court in *Carroll* and *Starling*. To overrule *Carroll* and *Starling* would rob our rule of its fundamental fairness.

Other views in support of the majority judgment would allow introduction of evidence of the prior conviction on the basis that it is the legitimate result of cross-examination on a subject first raised by the defendant. However, when the inquiry involves a prior conviction, it appears prohibited by the very verbiage of OCGA § 24-9-20 (b), which provides, in pertinent part: "If a defendant . . . wishes to testify . . . he may so testify in his own behalf. If a defendant testifies

he . . . may be examined and *cross-examined* as any othe̊r witness, except that *no evidence of* general bad character or *prior convictions* shall *be admissible* unless and until the defendant shall have *first put his character in issue.*" (Emphasis supplied.) To me, *Lehman v. State*, 165 Ga. App. 15 (299 SE2d 88) (1983) marks the outer limits of the scope of cross-examination in such cases. Accordingly, I would reverse, and would overrule Division 2 of *Holloway*.